**CANFIELD v. BLAW-KNOX CO.**

No. 6272.

Circuit Court of Appeals, Third Circuit.

Aug. 12, 1938.

Rehearing Denied Sept. 20, 1938.

John D. Morgan and George B. Finnegan, Jr., both of New York City, for appellant.

Edward J. O'Mara, of Jersey City, N. J., for appellee.

Before DAVIS and BIGGS, Circuit Judges, and DICKINSON, District Judge.

DAVIS, Circuit Judge.

The plaintiff has appealed from a decree of the District Court dismissing his bill "for want of equity".

The question at issue is whether or not the defendant, manufactured and sold concrete agitators embodying an invention confidentially disclosed to it by the plaintiff-inventor. The plaintiff is not entitled to recover under the evidence in this case unless there existed (1) a patentable invention, (2) a trust relationship, and (3) a usurpation of that invention by the defendant.

The alleged invention relates to a concrete agitator (a mechanism mounted on and driven by a truck used for carrying concrete) which stirs the already mixed concrete while being transported from a central mixing plant to the place where it is to be used. This stirring is necessary to prevent the stones and heavier or coarser sand grains in the concrete from settling to the bottom of the truck, and the lighter or finer sand, water and concrete from rising to the top. The system of having a central mixing plant and agitator-trucks carry the mixed concrete to the jobs is supposed to insure a higher and more uniform quality to the concrete and also far greater efficiency than could be obtained from using the smaller concrete mixers.

Prior to the plaintiff's invention, the defendant manufactured concrete agitators according to the specifications of the Graham patents No. 1,841,436 and No. 1,780,973. These agitators are described in patent No. 1,841,436 as follows:

"The combination with a vehicle body designed and constructed for the transportation of cementitious materials, the bottom of which has the shape of a portion of a solid of revolution, and means for agitating that portion of the cementitious material carried in said body which lies adjacent the bottom thereof, said means including a shaft rotatably supported in said body and disposed with its axis co-incident with the axis of the curbed portion of the bottom of the body, a plurality of axially spaced radially disposed and relatively short agitating blades remote from said shaft, a plurality of frames to which said blades are secured in groups, and means supporting the frames from said shaft, each frame comprising two spaced parallel cross members, and each tooth being adjustably secured to two of said members."

In 1929, the defendant sold a central mix system to the Warner Company in Philadelphia, Pennsylvania, where the plaintiff was employed as an engineer. The Graham agitator supplied with this system caused a considerable degree of trouble and was continually breaking down. Upon investigation, the plaintiff detected what he considered to be the basic defects in the design of this machine. He describes these defects in his brief as follows:

"The mechanism comprised a central shaft in the open-top truck body carrying three or four angularly-disposed paddles which turned through the liquid concrete. These paddles pushed and displaced a large amount of concrete, thus requiring tremendous power. Furthermore, the angular arrangement of the paddles about the shaft was such that at some-times one paddle would be in the mixture of concrete, while the other two or three would be out of it, and at other times two or more paddles would be in the concrete. Thus the torque on the drive shaft was frequently and recurrently being doubled and halved, throwing a tremendous torsional strain on the shaft and severe strains on the shaft bearings. As a result the mechanism would break down in one place and another and as soon as one weak feature was strengthened the breakage would occur at another weak point."

After recognizing the defects of the Graham agitator, plaintiff designed an im-

proved agitator supposedly free from these faults. His improvement consisted of placing agitator arms along the rotatable shaft in a helical arrangement, having a ribbon-like band connecting the outer extremities of these arms, and having overlapping scrapers on the ends of the arms for the purpose of scraping the sides of the truck. He applied for a patent on March 21, 1929, which was issued (No. 1,934,116) on November 7, 1933.

In his bill of complaint he alleges that after he had filed his application for the patent, the defendant inquired as to the nature of his invention; that he disclosed this to the defendant in confidence; and that after he had gone to Spain as foreign engineering representative of the Mack Truck Company, the defendant, in violation of the trust, manufactured and sold agitators embodying his invention. For this breach of trust, he contends that the defendant is liable for profits realized by it on the sale and use of these agitators.

In disposing of these contentions, the District Court made the following findings of fact:

"9. Defendant employed a helical arrangement of arms in certain concrete agitators manufactured by it beginning in the latter half of 1929 as a result of investigation and recommendation by its own employees and not as a result of a disclosure made to it or any of its employees by the plaintiff.

"10. The alleged disclosure of the plaintiff contained in Exhibit P-8 and the patent application drawings therewith enclosed involved nothing not already known in the mixing art. Said alleged disclosure involved neither invention nor discovery.

"11. There is no generic difference between mixing and agitating concrete. In the industry of delivering ready mixed concrete, the term agitating means continuing the mixing operation during hauling, to whatever extent is necessary, to prevent segregation.

"12. The alleged disclosure made by the plaintiff in Exhibit P-8 and the patent application drawings therewith enclosed was made by the plaintiff on his own initiative in the hope of inducing defendant to acquire rights under the patent application theretofore filed thereon by the plaintiff, and was not made at the request of the defendant or any responsible agent thereof, nor upon the promise of the defendant, either express or implied, that defendant would treat such disclosure in confidence."

These findings are supported by substantial evidence. Consequently, the alleged improvement was not a patentable invention. Neither was there any trust relationship between the parties. The so-called improvement used by defendant was designed by its own engineers independently of plaintiff's disclosure and the decree of the District Court is affirmed.