**PROTEXOL CORPORATION, Plaintiff-Appellant,**

v.

**KOPPERS COMPANY, Inc., Defendant-Appellee.**

No. 230, Docket 23759.

United States Court of Appeals
Second Circuit.

Argued Jan. 12, 1956.
Decided Jan. 30, 1956.

Julius L. Goldstein, New York City (E. John Ernst, Jr., New York City, on the brief), for plaintiff-appellant.

James B. Grant, New York City (Smith, Sargent, Doman & Grant, Murray Sargent, Jr., and Francis M. S. Peel, New York City, on the brief), for defendant-appellee.

Before CLARK, Chief Judge, and FRANK and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

Plaintiff appeals from dismissal of its complaint wherein it sought damages and equitable relief on the ground that defendant had violated its agreement for trade secrecy in use of plaintiff's secret chemical formula for treating wood for preservation and fire retardance. Originally the complaint also alleged patent infringement, but that claim was withdrawn and only the claim of unfair competition went to trial. Judge Ryan heard the parties and their several experts at a three-day trial, and then made findings and conclusions of law that defendant's agreement did not cover the formula now being used by defendant. Hence he entered the defendant's judgment which is now before us for review.

Both plaintiff and defendant have been in the wood treating business for a considerable number of years. Plaintiff's major activity has been devoted to impregnating wood primarily for the purpose of endowing it with fire-retardant qualities, while defendant's principal attention has been directed toward impregnating wood to impart perservative qualities. As early as 1927, however, defendant had been experimenting in an attempt to develop a formula to impart both preservative and fire-retardant qualities to wood. Defendant also knew

636

of plaintiff's activity in the field of fire retardation in wood and had knowledge of a patent obtained in 1930 by one Ernest Hartman, who was managing head of plaintiff for many years. This patent for the five separate formulae of a composition known commercially as "Protexol" and "Pyresote" was assigned to plaintiff. Protexol's advertising in 1939 disclosed to the public the combination of chemicals, but not the specific proportions of ingredients of this composition.

In 1940, plaintiff and defendant began negotiations looking to a disclosure of the formula of the Protexol or Pyresote composition. Defendant had done considerable experimental work in this field, but had not developed a formula which enjoyed as good a reputation in the trade for fire-retardant qualities as did plaintiff's product. Defendant's principal product, "CZC," had won general acceptance primarily as a wood preservative.

In 1942, a confidential disclosure was made by plaintiff to defendant of the precise composition of the Pyresote formula. In return for such disclosure defendant agreed to keep the formula secret and further consented to make royalty payments for its use. Employees and agents of defendant signed documents binding themselves to secrecy. The formula disclosed was not one of those claimed in the Hartman Patent of 1930.

At least since the fall of 1942 and running through November 3, 1945, defendant commercially used the disclosed formula and paid plaintiff royalties totaling $10,702.35. After that period no further use was made of the formula by defendant, and no more royalty payments were made. In 1948, defendant through its employee Bescher filed a patent application for a formula, CZC(FR), which it had been developing for some time; and it subsequently began to manufacture and sell this composition. Further, a disclosure of the contents of the substance was made by Bescher and others in a paper published in the proceedings of the American Wood Preservers Association in 1948. The ingredients of CZC (FR) are the same as those of Protexol or Pyresote, but the proportions in which these ingredients appear are markedly different.

Plaintiff contends that the disclosures and the use of CZC(FR) by defendant were violative of the 1942 agreement of trust and confidence. Defendant argues, and the court below has found, that the 1942 disclosure was only of the proportions of the ingredients involved, and that the subsequent disclosure and use of a formula having the same components, but in different proportions, was not subject to the prior agreement. The extent to which the components of the various compositions may be found to correspond is shown by the following table of approximate percentages by weight:

|  | CZC | Pyresote (Protexol) | CZC(FR) |
| --- | --- | --- | --- |
| Ammonium sulphate | | 37.2% | 10 % |
| Zinc chloride | 81.5% | 37.2% | 65.2% |
| Boric acid | | 24.8% | 10 % |
| Sodium dichromate | 18.5% | 0.8% | 14.8%[1] |

1. The CZC(FR) formula was the subject matter of the Bescher Patent referred to above, and the percentages here set forth are from Claim 3 of the patent. Another statement found in Claim 1 and in Judge Ryan's opinion substitutes an 80% weight of "chromated zinc chloride" for the two compounds zinc chloride and sodium dichromate; but as Judge Ryan points out (and see also Claim 2 of the patent), this is but a commercial term for the two compounds in the proportions of 81.5% and 18.5% respectively.

Upon a careful consideration of the record, we are constrained to conclude that the findings of Judge Ryan have substantial support in the evidence and cannot be held clearly erroneous. Then his conclusion that the agreement to disclose the Pyresote formula was not violated by disclosure of CZC(FR) follows naturally and must stand.

Judge Ryan has found that employment of inorganic salts for impregnating wood to get fire-retardant and preservative qualities and the use for this purpose of a composition embracing metal salts, boric acid, ammonium, and chromatic salts, together with an inorganic acid, were well known in the art as early as 1930. He has further determined on the basis of competent evidence that the combination of chemicals comprising the compound disclosed by plaintiff was not new. Hence plaintiff's claim to a special property right therein can be predicated only upon the proportion or percentage of each of the several chemicals in the composition.

There was another finding below that the disclosure of plaintiff's formula did not in any manner lead or contribute to the development of CZC(FR). The only novel or secret aspect of plaintiff's formula consisted of the disclosed proportions of the chemical ingredients as they were actually being applied by the plaintiff in production. Further, there was convincing testimony that CZC(FR) is not the physical or chemical equivalent of Pyresote.

▮▮▮ Our conclusion that plaintiff may not recover is reached with some reluctance, particularly in view of defendant's reiterated "moral bond" to secrecy. We have recently expressed the view that cases involving the confidential disclosure of trade secrets must be governed by " 'increasingly higher standards of fairness or commercial morality * *.' " 3 Restatement, Torts, ch. 35, p. 540 (1938), quoted with approval in Franke v. Wiltschek, 2 Cir., 209 F.2d 493, 499, 500; Q-Tips, Inc., v. Johnson & Johnson, 3 Cir., 206 F.2d 144, 145, certiorari denied Johnson & Johnson v. Q-Tips, Inc., 346 U.S. 867, 74 S.Ct. 106, 98 L.Ed. 377; Ross-Whitney Corp. v. Smith Kline & French Laboratories, 9 Cir., 207 F.2d 190, 196 note 17. We do not retreat from that position here, or from the sound principle of law that the fruits of a confidential disclosure must not be used or disclosed in breach of the agreement of trust.

▮▮▮ In this case, however, the evidence firmly supports the finding that there was no confidential disclosure of the combination of chemical ingredients, but only of the proportions of ingredients used; and as to the latter matter there was never any improper use or disclosure by defendant. This is not a case of improper use of a secret which has been modified or improved by the recipient. Cf. 4 Restatement, Torts § 757 and comment c, p. 9 (1939); Tower Mfg. Co. v. Monsanto Chemical Works, D.C.S.D. N.Y., 20 F.2d 386. Rather it involves use of chemical proportions developed entirely independently of the matter disclosed, and having no connection therewith, with the result that the new formula possesses chemical and physical properties different from the one revealed in confidence and that the new substance is not the equivalent of the old. Here, too, our somewhat restricted scientific knowledge is bolstered not only by the careful analysis of an experienced judge, but also by the persuasive explanation of experts of high scholarly reputation.

To reach an opposite conclusion on these facts we should necessarily be driven to the position that anyone receiving a trade secret may never thereafter experiment with the ingredients therein, even though their use for the purpose had been well known for years. Such a result is not only unnecessary for the promotion of business morality, but offensive to the sound policy of promoting technical progress. See Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 257, 66 S.Ct. 101, 90 L.Ed. 47; De Filippis v. Chrysler Sales Corp., 2 Cir., 159 F.2d 478, certiorari denied 331 U.S. 848, 67

S.Ct. 1733, 91 L.Ed. 1857; Northrup v. Reish, 7 Cir., 200 F.2d 924; Gilbert v. General Motors Corp., 2 Cir., 133 F.2d 997, certiorari denied 319 U.S. 743, 63 S.Ct. 1031, 87 L.Ed. 1700.

Affirmed.