BOLT ASSOCIATES, INC.

v.

ALPINE GEOPHYSICAL ASSOCIATES, INC. and Walter C. Beckmann, Appellants.

No. 15750.

United States Court of Appeals Third Circuit.

Argued Feb. 11, 1966.

Decided Sept. 6, 1966.

See also D.C., 244 F.Supp. 458.

David C. Toomey, Philadelphia, Pa., for appellants.

Roland T. Bryan, Stamford, Conn., for appellee.

Before McLAUGHLIN, FORMAN and GANEY, Circuit Judges.

## OPINION OF THE COURT

FORMAN, Circuit Judge.

The appellant herein, Alpine Geophysical Associates, Inc. (hereinafter Alpine), a New Jersey corporation having its principal place of business in Norwood, New Jersey, and Walter C. Beckmann, its president and one of its directors, were named as defendants in a complaint for

breach of contract and breach of trust filed by the appellee herein, Bolt Associates, Inc. (hereinafter Bolt), a Connecticut corporation having its principal place of business in East Norwalk, Connecticut.

In substance Bolt alleged that in the spring of 1961 it was engaged in the business of manufacturing, selling and leasing oceanographic equipment and in pursuance thereof it had discovered a system of conducting ocean floor surveys using echo sounders in which the sound source is the explosive release of air under pressure, an alleged improvement over the existing high voltage "sparkers" and combustible gas explosives used for such purposes.

Specifically, Bolt charged that it had designed and developed a sounding device for seismic profiling of ocean floors under the trademark name "PAR" gun (pneumatic acoustical repeater). Both the survey system and the underwater pneumatic acoustical repeater were allegedly a secret process and device. The complaint further alleged that Bolt in early June 1961 informed Lamont Geological Observatory of Columbia University, Palisades, New York (hereinafter Lamont) that it had developed the system and device and had demonstrated both to Lamont, following which one or more of Lamont's representatives suggested that Bolt communicate with Walter C. Beckmann, President of Alpine, to ascertain his interest in them.

About the last week in June 1961 Bolt demonstrated the process and device in secret to Mr. Beckmann at Alpine's place of business in Norwood, New Jersey, after which Mr. Beckmann discussed with Bolt the matter of a license agreement under which Alpine would manufacture the device and use the system. On July 19, 1961, as a condition of seeing the

working drawings of the device, Mr. Beckmann signed an agreement for Alpine providing that Alpine and associate companies would neither divulge Bolt's pneumatic sound source design to others nor incorporate it in the design of other devices until a patent had been issued or denied.[1] At the time of the filing of the complaint the patent had not been issued or denied.

In the last week of July Bolt rented a PAR gun to Alpine and furnished a technician to operate it in connection with a survey Alpine was making in Baychester, New York. Alpine thereafter expressed no interest in taking a license and discussions thereon were terminated.

Bolt charges that Mr. Beckmann and Alpine misled it as to their interest in the PAR gun and in violation of their written obligation disclosed the secrets reposed in them to Lamont and others. It is further alleged by Bolt that Alpine sold to Lamont devices embodying such secrets, each knowing that the other had received Bolt's disclosures of such discoveries in trust and confidence.

In 1964 Bolt heard that Alpine was interested in pneumatic echo sounders and reopened discussion with Mr. Beckmann with a view to granting a license to Alpine to use, but not to make and sell, the PAR gun and the process of using it. During such discussions Bolt reminded Mr. Beckmann of his and Alpine's obligation under the secrecy agreement and warned against making disclosures or assisting others to make the gun or use the system.

During the discussions Mr. Beckmann induced Bolt to place one of its latest models in Alpine's and his hands for use in testing it aboard their survey ships. They had that model in their possession at least three days. The negotiations continued for two months, Mr. Beck-

---

1. The agreement read:
 "*Confidential Agreement.*
 "I hereby agree that I, have been shown the design of the Pneumatic Acoustical Repeater as developed by BOLT Associates in full confidence, and agree not to divulge the design to others, to build or use, or incorporate in the design of oth-

er devices, until a patent has been issued or denied.
 "Date: July 19, 1961
 "Signed: Walter C. Beckmann, Pres.
 For Alpine Geophysical Associates
 and associated companies."
 [Corporate Seal of Alpine Geophysical Associates, Inc.]

mann and Alpine representing that they desired to evaluate the apparatus completely before they decided whether to conclude a license agreement. The complaint further alleged that during these negotiations Mr. Beckmann admitted that Alpine had made six devices and Lamont had made twenty-six.

Bolt prayed:

That Mr. Beckmann and Alpine should be enjoined during the pendency of the action and permanently thereafter from:

1. Divulging any features of its underwater pneumatic acoustical repeater and system as disclosed to them in July 1961 and November 1964;
2. building, using or incorporating any of the features thereof in the designs of others; and
3. from using them in geophysical surveys or like applications.

Bolt demanded the loss of profits, exemplary damages, court costs and attorneys' fees.

Filed with the complaint was an affidavit by Mr. Chelminski, President of Bolt, who deposed that a study had been conducted during the year prior to April 6, 1965 of the feasibility of constructing a tunnel from France to England in connection with which surveys had been made of the configuration of the English Channel; that Alpine had done at least a portion of the Channel study; that Bolt had been contacted by the company that had made the study and informed that not as much detail of the Channel as it desired appeared in its study and that inquiry was made as to whether Bolt could supply the detail using its underwater pneumatic acoustical repeater and survey system.

Mr. Chelminski averred that Bolt's device was ideally suited to provide the desired detail and that Alpine, being aware of Bolt's secrets, might be tempted to unlawfully use them to obtain the Channel survey work in place of Bolt.

Upon the verified complaint the District Court issued an order directing that Mr. Beckmann and Alpine show cause why an injunction pendente lite should not issue against them in accordance with the prayer of the complaint. The order meanwhile temporarily restrained them from divulging the alleged secret features of the Bolt's device and system and from building or using them in designs of others or in their own operations. Mr. Beckmann filed an affidavit in opposition to the application for the preliminary injunction in which he denied, among other things, the accuracy of the version of the facts set forth by Bolt in its complaint and that of Mr. Chelminski in his affidavit.

On an adjourned day of the order to show cause the District Court took evidence following which it filed an opinion[2] in which, among other things, it found that Bolt disclosed a trade secret to Mr. Beckmann in July 1961 and that Alpine was obligated not to "divulge the design to others, to build or use, or incorporate [it] in the design of other devices until a patent has been issued or denied." It further found, however, that the "exact working plan of the devices manufactured by Alpine [for Lamont and others] differs from the design of the Bolt device * * *" and that "the construction of the word 'design' is a substantial issue and that issue is presently unresolved." The application for preliminary injunction was therefore denied.

Thereafter Mr. Beckmann and Alpine filed an answer in which, among other things, they admitted that Bolt demonstrated its device to Mr. Beckmann in or about the last week of June 1961 and made certain disclosures to him in July 1961; that discussions took place between them thereafter; and that Mr. Beckmann signed a document on July 19, 1961. They substantially denied, or averred insufficient knowledge to form a belief as to, all other allegations contained in the complaint.

On pretrial discovery Mr. Beckmann and a number of other witnesses were

---

2. Bolt Ass., Inc. v. Alpine Geophysical Asso., Inc., 244 F.Supp. 458 (D.N.J.1965).

called on behalf of Bolt and gave their depositions. Depositions were also given by witnesses on behalf of Alpine and Mr. Beckmann.

In due course Bolt gave notice of a motion for partial summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure:

> "on the issue of legal liability for the breach of the Confidential Agreement dated July 19, 1961, by the building of the design for third parties on the ground the plaintiff is entitled to such a judgment as a matter of law."

Argument on the motion was heard by the District Court following which formal "Findings of Fact and Conclusions of Law" were filed. In them it held, among other things, as matters of law, that Bolt disclosed a trade secret to Alpine and Mr. Beckmann in July 1961; that the agreement of July 19, 1961 should be construed to oblige Alpine and Mr. Beckmann "not to divulge to others or to use or build a pneumatic sound source that is substantially like Bolt's design until a patent had been issued or denied"; that the pneumatic sound source manufactured by Alpine "is substantially similar in design" to that disclosed to Alpine and Mr. Beckmann by Bolt by reason of the equivalence of their functions and relationship of essential parts; that both sound sources operate on the same principle; that such manufacture by Alpine and Mr. Beckmann constituted a breach of their agreement of July 19, 1961 and that the defense interposed by Alpine and Mr. Beckmann that the specific model of sound source manufactured by them "was developed by Lamont Geological Observatory of Columbia University, is no defense to the breach of contract".

Consequently, the District Court entered an order directing that Alpine and Mr. Beckmann and those within their control or in concert with them should be enjoined until Bolt's patent is issued or denied, from:

> "(a) divulging any of the features of plaintiff's underwater pneumatic acoustical repeater and system disclosed to them in July 1961 and November 1964.
>
> "(b) building or using underwater pneumatic acoustical repeaters or systems incorporating any of the features of plaintiff's underwater pneumatic acoustical repeater and system disclosed to them in July 1961 and November 1964.
>
> "(c) incorporating in the designs of others any of the features of plaintiff's underwater pneumatic acoustical repeater and system disclosed to them in July 1961 and November 1964.
>
> "(d) using plaintiff's underwater pneumatic acoustical repeater and system in geophysical surveys or in like applications."

It further ordered that Alpine and Mr. Beckmann and those within their control or associated in active concert with them until Bolt's patent is issued or denied, should be enjoined from divulging, or incorporating into acoustical repeaters and systems of their own or of others:

> "(a) a piston valve for releasing compressed air;
>
> "(b) a piston valve that is accelerated in the direction of the air escapement before releasing the air;
>
> "(c) an arrangement providing a direct release of air into water with a pop-out piston;".

Finally, it ordered that Alpine and Mr. Beckmann and those within their control or associated in active concert with them should be enjoined until Bolt's patent is issued or denied, from divulging, building or using any underwater pneumatic acoustical repeater and system which is substantially equivalent in design to and operates on the same principle as disclosed to them by Bolt in July 1961 and November 1964.

The District Court reserved all other issues in the case for future trial. From the above order Alpine and Mr. Beckmann took this appeal.

■ Jurisdiction by reason of diversity and requisite amount of claimed dam-

ages is present. The transaction upon which the complaint is based having occurred in New Jersey, the law of that state is controlling.

At the outset it is to be emphasized that the motion for partial summary judgment was addressed to the issue whether or not Alpine and Mr. Beckmann breached the alleged trade secret agreement. It did not touch the issue of whether or not the appellants in fact divulged the trade secret to others or assisted others to utilize it, which issue remains for trial.

Appellants contend that there are three issues which preclude the award of summary judgment. Distilled, these are: (1) an issue as to the meaning of the word "design"; (2) whether there is a material dispute of fact as to the similarity of the two devices; and (3) whether manufacture for and to the order of a third party constitutes a defense.

*I—Whether There is a Triable Issue as to the Meaning of the Word "Design"*

 The word "design" is material in defining the degree of similarity required under the contract, and it is a word of sufficient breadth so that parole explanation might have been appropriate.[3] But since it is also a word of common parlance used here in common context in a written agreement, it is a matter for judicial interpretation, unless proof of a specialized meaning is offered. Specifically, where as here, one party seeks summary judgment on such a con-

tract, the opposing party must preserve the issue for trial by showing facts which indicate that the parties intended a different meaning. But no such facts were advanced by the appellants by any of the evidentiary means specified by Rules 56 (c) and 56(e).[4]

Thus, the only question is whether the District Court's interpretation of the word "design" as meaning mechanical equivalence was correct as a matter of law. That such equivalence is the test of similarity under the law of New Jersey is clear from Consolidated Boiler Corp. v. Bogue Electric Co.[5] There a written contract prohibited the manufacture of boilers constructed "in accordance with the drawings annexed hereto," a term more narrow than that involved in the present case. In holding for the plaintiff, the court said that the written contract was merely declaratory of the trust implied by law, and held that the contractual terms were satisfied despite the fact that the boilers were not constructed precisely in accordance with the stated drawings. The same scope of similarity would obtain in the absence of any written contract. See International Industries v. Warren Petroleum Corp.[6] Hence we find no error in the interpretation of the District Court of the word "design" as meaning "mechanical equivalence."

*II—Whether There is a Dispute of Material Fact as to the Similarity of the Two Devices [7]*

 We think that the District Court was justified in concluding that the two

---

3. 3 Williston, Contracts § 650 (1961).

4. Counsel for appellants merely stated his belief that there was some evidence of the "business context" that should be put before the court. Not only is this not the factual presentation contemplated by the Federal Rules, but counsel did not even indicate what this evidence might be or how it would be relevant to determine the meaning of "design." Counsel's speculations are not sufficient to resist a motion for summary judgment. Robin Construction Co. v. United States, 345 F.2d 610 (3 Cir. 1965).

5. 141 N.J.Eq. 550, 58 A.2d 759 (1948).

6. 99 F.Supp. 907 (D.Del.1951), aff'd and rev'd in part 248 F.2d 696 (3 Cir. 1957).

7. Copies of the schematic drawings of the respective devices introduced in evidence as Plaintiff's [Bolt's] Exhibits 4 and 5 will be found in the Appendix attached hereto. These are not to be confused with the drawing shown to Mr. Beckmann on July 19, 1961. That was a copy of a working drawing in greater detail used in Bolt's application for a patent and marked Plaintiff's [Bolt's] Exhibit P–1 in evidence at the hearing on preliminary injunction.

devices were of "the same design" and that there were no triable factual issues affecting this conclusion. The facts before the court showed that both devices, cylindrical in shape, were operated by allowing the sudden release of compressed air against the water to create a sound. Both devices achieved this effect by the acceleration of firing pistons moving longitudinally through the chambers toward the opening and moving outwardly into the water to allow the "firing" of the device by the escape of air. Both devices were triggered by unbalanced air pressure. There was uncontradicted testimony that the devices operate similarly from a mechanical point of view.

There are, to be sure, differences in the two devices. The District Court recognized that the dimensions of the overall devices as well as the air chambers within are different; that there is a spring mechanism in one which is lacking in the other; that the shapes of the respective pistons are somewhat different, in length and roundness; that the air ports are in different locations. But there are no facts in dispute regarding the construction of the two devices nor how they work; there are no facts in dispute as to which elements are similar and which are different nor the functions performed by each element. Nor was the matter so technical or complex that it was beyond the understanding of the court;[8] and even if this were true, no conflict of fact was raised by expert testimony that the District Court in fact heard.

■ Since we have concluded that the test was mechanical equivalence, there is no apparent reason why the analogy may not be made to the doctrine of equivalence in patent law, and by that doctrine the basic identity of two devices is not altered by changing the relative positions of parts where the parts perform the same respective functions after the change,[9] nor merely because an improved result is obtained.[10] There were no disputed facts that are material within this test. In fact, on deposition, Mr. Beckmann stated that the sharpness of the sound was related to the acceleration of the pistons and the shapes and sizes of the cavities in both devices. But immediately after the statement he testified that from his knowledge of the drawings and details he could see no mechanical features of the two devices that would distinguish them in sound-producing characteristics, although he added that "I think I can say that the one labeled Alpine has got a sharper pulse than the one labeled Bolt, from what I have heard," without attributing this result to any specific difference in design.[11]

8. See Steigleder v. Eberhard Faber Pencil Co., 176 F.2d 604, 605 (5 Cir.), cert. den. 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548 (1949); Vermont Structural Slate Co. v. Tatko Bros. Slate Co., 233 F.2d 9 (2 Cir.), cert. den. 352 U.S. 917, 77 S.Ct. 216, 1 L.Ed.2d 123 (1956).

9. See e. g. Vallen v. Volland, 122 F.2d 175 (8 Cir. 1941).

10. Highway Appliances Co. v. American Concrete Expansion Joint Co., 93 F.2d 113 (7 Cir.), cert. den. 303 U.S. 653, 58 S.Ct. 751, 82 L.Ed. 1113 (1938).

11. The following is the testimony of Mr. Beckmann on direct examination by counsel for Bolt:

"Q. Your left entitled 'Bolt' your right entitled 'Alpine.' Are these two units correct representations of the two devices in question here?

"A. Yes.

"Q. Both of these units show an outer member of the lower portion of the drawing entitled 'Firing piston.' Would you say, from your understanding of the drawings and their operation, that both of these were pistons which were moved outwardly into the water in order to allow firing of the device?

"A. Yes.

"Q. Would you say from your operation, knowledge of the operation of these devices, and the drawing here, that both of these pistons were accelerated or moving longitudinally in the direction of opening at the time they did open?

"A. Yes.

"Q. Would you say that both of them were triggered by an unbalanced pres-

*III—Whether Manufacture for and to the Order of a Third Party Constitutes a Defense to the Charge of Breach of Contract*

 In its fourth conclusion of law herein, the District Court determined:

"The defense interposed by the defendants [appellants here] that the specific model of sound source manufactured by them was developed by Lamont Geological Observatory of Columbia University is no defense to the breach of contract by the defendants."

In this respect, we believe that the District Court erred. It is the *improper* appropriation of another's secret which is the legal basis for liability. The law of trade secrets does not give patent law protection, where, in the latter, liability is based primarily on similarity rather than impropriety.[12] There was nothing improper in Alpine's manufacture for Lamont, if in fact Lamont's development was proper, and we cannot construe the contract to forbid such permissible activity.[13] In analogous situations in patent and copyright cases it has been rec-ognized that independent development may be urged as a defense to an allegation of misappropriation of ideas or breach of confidence.[14] Since the defense would have been available had Alpine sought to interpose its own independent development, it should also have the opportunity to interpose that of a third party, Lamont.

But it is to be observed that it is appellants' burden to show not only that Alpine built to the order and specifications of Lamont, but also that Lamont's development was free from misappropriation of Bolt's design. This must be so because the appellants held in high confidence a trade secret and had the opportunity to investigate the independent origin of the device at the time of the decision whether to manufacture it. Moreover, to hold otherwise would leave a door open for an entrusted party to make a plaintiff's proof problems insuperable through the collaboration of a third party. Such a burden cannot rest on mere self-serving assertions, but rather, a heavy burden of persuasion rests upon one so charged to show that the production was the result of independent de-

---

sure on various sized pistons, although in different ways?

"A. Yes.

"Q. Would you say that the sound emission from both of these units is a direct result of the air pressure being opened to the water?

"A. Yes.

"Q. Would you say that the spike effect or the sharp effect of the initial sound is related to the acceleration of the firing pistons which are identified on these drawings?

"A. Yes. I imagine it is also in the shapes and sizes of the cavities.

"Q. Would you say that the energy produced by the sound of these two sources is related to the pressure of the air which is contained in them prior to firing?

"A. Yes.

"Q. From the sound producing viewpoint can you point out to me any material difference between the two devices?

"A. No, not from these schematics.

"Q. Is there any mechanical feature of these two units, both from what you know of their details from these other draw-ings that you have seen, and the schematics, which would in any way distinguish the sound producing characteristics of these two units? I mean in a substantial amount. I don't mean in very small details.

"A. I think the answer to that is no, I don't see any difference from the drawings or my knowledge of the details, but I think I can say that the one labeled Alpine has got a sharper pulse than the one labeled Bolt, from what I have heard."

12. Restatement of Torts, § 757, Comment (a) (1939). Cf. Atlantic Wool Combing Co. v. Norfolk Mills, Inc., 357 F.2d 866, 868–869 (1 Cir. 1966) (Judge Hastie by designation).

13. See Canfield v. Blaw Knox Co., 98 F.2d 805 (3 Cir. 1938).

14. Overman v. Loesser, 205 F.2d 521 (9 Cir.), cert. den. 346 U.S. 910, 74 S.Ct. 241, 98 L.Ed. 407 (1953); Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, 923, 928 (4 Cir.), cert. den. 298 U.S. 673, 56 S.Ct. 938, 80 L.Ed. 1395 (1936). Cf. Harris v. Fawcett Publications, 176 F. Supp. 390 (S.D.N.Y.1959).

velopment and not from the use of information confidentially reposed.[15]

We can see no verbiage in the contract which denies this defense to the appellants. If indeed it were intended by the parties that such defense should be unavailable, it is the burden of the appellee, Bolt, to prove such by parole evidence.

That genuine material issues of disputed fact exist regarding Lamont's development of a pneumatic acoustical repeater independently of Bolt's device has been sufficiently demonstrated by the allegations of the complaint, verified under oath by Stephen Chelminski, Bolt's president, and the testimony of John Ewing, Senior Research Associate of Lamont, called as a witness on behalf of the appellants on the hearing in the District Court to determine whether a preliminary injunction should issue.

In sum, we approve the findings of the District Court that no triable issue exists with regard to the meaning of the word "design" or the similarity of the two devices. We find error, however, in the conclusion that the defense of independent development by Lamont was unavailable to the appellants.

Hence the order of the United States District Court for the District of New Jersey filed November 15, 1965 on the motion of Bolt Associates, Inc., for partial summary judgment will be vacated and the cause remanded for further proceedings consistent with this opinion.

**A P P E N D I X**
Plaintiff's [Bolt's] Exhibit - 4

15. Hoeltke v. C. M. Kemp Mfg. Co., 80 F.2d 912, 928 (4 Cir. 1936).

APPENDIX
Plaintiff's [Bolt's] Exhibit - 5

BOLT

ALPINE

TRIGGERING PISTON

FIRING PISTON

TRIGGERING PISTON

FIRING PISTON