[No. B145831. Second Dist., Div. Four. Aug. 7, 2003.]

SARGENT FLETCHER, INC., Plaintiff and Appellant, v.
ABLE CORPORATION, Defendant and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

*Pursuant to California Rules Of Court, Rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

1660

**COUNSEL**

Horvitz & Levy, Stephen E. Norris, Jason R. Litt; Fried, Frank, Harris, Shriver & Jacobson, Stephen D. Alexander and Susan C. Chun for Plaintiff and Appellant.

Manatt, Phelps & Phillips, Brad W. Seiling, Adam Pines; Greines, Martin, Stein & Richland, Robin Meadow, Barbara W. Ravitz and Donovan Cocas for Defendant and Respondent.

**OPINION**

**EPSTEIN, J.**—An aerospace manufacturer subcontracted with an engineering company for development of a new in-flight aircraft refueling system. Subject to a confidentiality agreement, the manufacturer revealed trade secrets to the subcontractor in order to facilitate the design of a new device for the system. After the relationship disintegrated, the subcontractor contracted with the United States Air Force to create a similar device. The manufacturer sued the subcontractor for misappropriation of trade secrets under the California Uniform Trade Secrets Act (UTSA). The subcontractor denied using trade secrets, claiming it reverse engineered and independently developed the device. The principal issue in this case is who bears the burden of proof with respect to that claim. The manufacturer sought a trial court instruction that placed the burden of proof on the subcontractor, arguing the subcontractor was in the better position to bear that burden. The trial court refused the manufacturer's proposed instruction. The jury found for the subcontractor.

The law deals with this problem by shifting the *burden of producing evidence*, not the *burden of proof*, which remains with the plaintiff or the party asserting an affirmative defense, and does not shift. The practical effect

of this allocation is to require a defendant to produce rebutting evidence once the plaintiff has presented a prima facie and credible case. This is a fair allocation, well suited to a fair result. There are limited exceptions (and some confusion) in the reported cases. But the basic principles controlling this allocation of burdens remain intact. They govern the issue presented in this case.

For this reason, in the published portion of this opinion, we find no error in the court's ruling on the proposed instruction. We also conclude that under the facts of the case, even if there was error, it was not prejudicial. In the nonpublished portion of the opinion, we reject the claim that evidence was improperly admitted.

## FACTUAL AND PROCEDURAL SUMMARY

Sargent Fletcher, Inc. (Sargent Fletcher), designs and manufactures in-flight aircraft refueling systems. Able Corporation (Able), is an engineering company that designs mechanical devices for the aerospace industry.

Sargent Fletcher designed the FR-300, an in-flight refueling system, in the late 1950's. The system typically mounts on the wings of a Lockheed C-130 tanker aircraft and allows mid-air refueling of aircraft such as fighter jets and helicopters. The FR-300 functions using a hose and drogue system. A control assembly runs the hose and reel portion of the hose and drogue system. The control assembly is the "brain" of the system, governing the extension, retraction, and storage of the hose. The "brain" automatically maintains a constant tension on the probe to prevent the hose from snapping or becoming too loose during refueling. In the early 1990's, the Air Force contracted with Sargent Fletcher to replace the original FR-300's "brain," which had hydro-mechanical controls, with an updated microprocessor-based control system. Sargent Fletcher subcontracted work for development of the microprocessor controls to Able. In order to perform under its contract, Able needed access to Sargent Fletcher's proprietary information on the FR-300 design. Sargent Fletcher provided that access to Able.

In September 1994, while the companies were in the midst of developing the new technology, Sargent Fletcher filed for bankruptcy protection. The company that purchased Sargent Fletcher pulled out of the contract with Able, but the two firms continued to work together without a written agreement.

Able withdrew from the collaboration in December 1995. Able then won an Air Force contract to build a system to replace the FR-300. Sargent Fletcher sued Able, alleging misuse of its trade secret information. Able

generally and specifically denied all allegations in Sargent Fletcher's complaint and pleaded 14 affirmative defenses, none of which asserted reverse engineering or independent derivation.

The case was tried to a jury. The trial lasted seven weeks. Each party presented volumes of evidence bearing on whether Able improperly used Sargent Fletcher's trade secret. Sargent Fletcher proposed an instruction that would have placed the burden of proof for the element of use of the trade secret onto Able: "If you believe that Sargent Fletcher disclosed any trade secrets for its FR-300 series aerial refueling system to Able, and that Able subsequently manufactured a substantially similar system, the burden then shifts to Able to prove that it in fact developed its hose reel system independently, that is, without the use of any of Sargent Fletcher's trade secrets." The trial court rejected the instruction. After five weeks of deliberation, the jury reached a verdict for the defendant, Able. In a special verdict, the jurors found (nine to two) that at least one of Sargent Fletcher's drawings and specifications contained a trade secret to which Able had access, but that Able *did not use* one or more of the trade secrets in designing, manufacturing, or testing its own product. Sargent Fletcher has appealed from the ensuing judgment.

## DISCUSSION

### I

Under the UTSA, a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff. (Civ. Code, § 3426.1;[1] see *Frantz v. Johnson* (2000) 116 Nev. 455, 466 [999 P.2d 351] [Nevada Supreme Court detailing similar elements for the

---

[1] Civil Code section 3426.1 provides: "Definitions.

"As used in this title, unless the context requires otherwise:

"(a) 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means.

"(b) 'Misappropriation' means:

"(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

"(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

"(A) Used improper means to acquire knowledge of the trade secret; or

"(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

"(i) Derived from or through a person who had utilized improper means to acquire it;

"(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

same provision of the UTSA]; *Total Care Physicians, P.A. v. O'Hara* (Del.Super. 2001) 798 A.2d 1043, 1052–1053 [Superior Court of Delaware detailing similar elements for the same provision of the UTSA].) " 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but "[r]everse engineering or independent derivation alone shall not be considered improper means." (Civ. Code, § 3426.1, subd. (a).)

During the seven-week trial, the parties presented extensive evidence and testimony to convince the jury that Able did or did not misappropriate Sargent Fletcher's trade secrets. There is no issue on appeal as to sufficiency of the evidence to support the jury's verdict in favor of Able. Because there is not, there is no need to discuss the technical details of Sargent Fletcher's claim that Able improperly used its technology or that Able could not have independently derived or reverse engineered the device. Instead, the issues are whether the trial court erred in rejecting Sargent Fletcher's proposed jury instruction or in admitting Able's documentary evidence and, if so, the effect of that error. The principal objection to the instruction was that it would have shifted the burden of proof to show proper use onto the defendant. Able also asserted various technical objections, which we do not discuss since Able's principal objection is well taken.

## II

We begin with a discussion of key terms: *burden of proof* and *burden of producing evidence.* Attorneys, judges, and commentators often have confused these terms and the concepts they represent. As the United States Supreme Court observed, "For many years the term 'burden of proof' was ambiguous because the term was used to describe two distinct concepts. Burden of proof was frequently used to refer to what we now call the burden of persuasion—the notion that if the evidence is evenly balanced, the party

---

"(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

"(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"(c) 'Person' means a natural person, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

"(d) 'Trade secret' means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

"(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

"(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy."

that bears the burden of persuasion must lose. But it was also used to refer to what we now call the burden of production—a party's obligation to come forward with evidence to support its claim." (*Director, Office of Workers' Compensation Programs v. Greenwich Collieries* (1994) 512 U.S. 267, 272 [129 L.Ed.2d 221, 114 S.Ct. 2251]; see 2 McCormick, Evidence (5th ed. 1999) Burden of Proof, § 336, p. 409.)

■ The terms burden of proof and burden of persuasion are synonymous. (1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Proof, § 3, p. 157; 2 McCormick, Evidence, *supra*, Burden of Proof, § 336, p. 409.) Because the California usage is "burden of proof," we use that term here.

"Except as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) ■ To prevail, the party bearing the burden of proof on the issue must present evidence sufficient to establish in the mind of the trier of fact or the court a requisite degree of belief (commonly proof by a preponderance of the evidence). (Evid. Code, §§ 115, 520.) The burden of proof *does not shift* during trial—it remains with the party who originally bears it. (Evid. Code, § 500; *Mathis v. Morrissey* (1992) 11 Cal.App.4th 332, 346 [13 Cal.Rptr.2d 819]; *Smith v. Santa Rosa Police Dept.* (2002) 97 Cal.App.4th 546, 569 [119 Cal.Rptr.2d 72]; 2 McCormick, Evidence, *supra*, Burden of Proof, § 336, pp. 409–410.)

Historically in California, the burden of producing evidence or burden of production also has been known as the "burden of going forward" with the evidence. (*People v. Valverde* (1966) 246 Cal.App.2d 318, 321 [54 Cal.Rptr. 528]; Evid. Code, § 110; *Mathis v. Morrissey, supra*, 11 Cal.App.4th at p. 346; 1 Witkin, Cal. Evidence (4th ed. 2000) Burden of Producing Evidence, § 2, p. 156.) Here, we use "burden of producing evidence" as that is the California code usage. (Evid. Code, § 110.)

■ Unlike the burden of proof, the burden of producing evidence *may* shift between plaintiff and defendant throughout the trial. (See Evid. Code, § 550; Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 550, p. 631; 1 Witkin, Cal. Evidence, *supra*, Burden of Producing Evidence, § 4, pp. 157–158; 2 McCormick, Evidence, *supra*, Burden of Proof, § 336, p. 409.) Initially, the burden of producing evidence as to a particular fact rests on the party with the burden of proof as to that fact. (Evid. Code, § 550, subd. (b); 9 Wigmore, Evidence (Chadbourn ed. 1981) § 2487, p. 293.) If that party fails to produce sufficient evidence to make a prima facie case, it risks nonsuit or other unfavorable determination. (*Mathis v. Morrissey, supra*, 11 Cal.App.4th 332, 346; 1 Witkin, Cal. Evidence, *supra*, Burden of Producing Evidence § 2, p. 156; 9 Wigmore,

Evidence, *supra*, § 2487, pp. 293–294.) But once that party produces evidence sufficient to make its prima facie case, the burden of producing evidence *shifts* to the other party to refute the prima facie case. (See Evid. Code, § 550; Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 550, p. 631; 1 Witkin, Cal. Evidence, *supra*, Burden of Producing Evidence, § 4, p. 158; 9 Wigmore, Evidence, *supra*, § 2487, p. 294.) Even though the burden of producing evidence shifts to the other party, that party need not offer evidence in reply, but failure to do so risks an adverse verdict. (*Ibid.*) Once a prima facie showing is made, it is for the trier of fact to say whether or not the crucial and necessary facts have been established. (*Ibid.*)

## III

■ Sargent Fletcher argues that Able should have borne the burden of proof to demonstrate it did not use the plaintiff's trade secret through improper means (the second element for misappropriation under the UTSA). Able counters that although the burden of producing evidence may have shifted to it if Sargent Fletcher established a prima facie case, the burden of proof to demonstrate use of a trade secret through improper means remained with the plaintiff, Sargent Fletcher. We agree.

As we have seen, California law provides that "[e]xcept as otherwise provided by law, a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.) "The party claiming that a person is guilty of crime or wrongdoing has the burden of proof on that issue." (Evid. Code, § 520.) In sum, the plaintiff generally bears the burden of proof to establish its prima facie case.

## A

■ As we also have discussed, to prove misappropriation of a trade secret under the UTSA, a plaintiff must establish (among other things) that the defendant improperly "used" the plaintiff's trade secret. (Civ. Code, § 3426.1.) Thus, under Evidence Code sections 500 and 520, the plaintiff bears the burden of proof on that issue, both at the outset and during trial. On the other hand, the defendant bears the burden of proof on new matter and affirmative defenses. (*Rancho Santa Margarita v. Vail* (1938) 11 Cal.2d 501, 543 [81 P.2d 533].) Both sides agree that reverse engineering and independent derivation are not affirmative defenses. We turn to whether they are "new matter." There are no reported California cases on the point.

The only California state authority Sargent Fletcher cites is a nonpublished California Superior Court case: *Cybertek Computer Products, Inc. v. Whitfield*

(Super. Ct. L.A. County, 1977, No. 23911). But "[a] written trial court ruling has no precedential value." (*Santa Ana Hospital Medical Center v. Belshé* (1997) 56 Cal.App.4th 819, 831 [65 Cal.Rptr.2d 754].) *Cybertek* has no value in this court. *Droeger v. Welsh Sporting Goods Corp.* (9th Cir 1976) 541 F.2d 790, a federal case applying California law before the UTSA was adopted, is the primary decision on which Sargent Fletcher relies to demonstrate that the defendant should bear the burden of proof for the second element. But *Droeger* actually places the burden of proof on the plaintiff and describes the shift of the burden of producing evidence to the defendant: "As a number of cases have pointed out [see e.g., *Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc.* (3d Cir. 1966) 365 F.2d 742, 749, and cases cited therein], disclosure of the secret to the defendant, followed by manufacture of a closely similar device by the defendant, *shifts to the defendant the burden of going forward with the evidence* to prove, if it can, that it arrived at the process by independent invention." (*Droeger v. Welsh Sporting Goods Corp., supra,* 541 F.2d at p. 793 & fn. 2, italics added.) (Ironically, the authority cited in *Droeger*, *Bolt Associates*, stands for the opposite proposition. Applying New Jersey common law (not the UTSA), the court placed the *burden of proof* on the defendant to show reverse engineering. (*Bolt Associates, Inc. v. Alpine Geophysical Associates, Inc., supra,* 365 F.2d 742, 749–750.) These cases further illustrate the confusion in the courts concerning the distinction between the burden of proof and the burden of producing evidence.)

We turn to the statute. ■ The statutory design indicates that the Legislature did not intend independent derivation or reverse engineering to be new matter or an affirmative defense. The references to independent derivation and reverse engineering are embedded within the definition of improper means. (Civ. Code, § 3426.1, subd. (a).) They are not set off as separate defenses or even separate definitions. It is the plaintiff's burden to show improper use as a part of its prima facie case. ■ Proof that defendant's use resulted from independent derivation or reverse engineering is evidence that there was no improper use on its part. The defendant does not have a "burden of proof" to make that showing. But it acts at its peril if it fails to present evidence that rebuts the plaintiff's showing. In some cases, its failure to do so may require judgment in plaintiff's favor. (See Cal. Law Revision Com. com., 29B West's Ann. Evid. Code (1995 ed.) foll. § 550, p. 631.)

Stated another way, the two claims (improper use and denial of such use) are opposite sides of the same coin. The plaintiff's proof that another party used plaintiff's trade secret, to which that party gained access (properly, for a limited purpose, or otherwise), and that the party's identical or similar product incorporates the same design, is a prima facie showing that the party did not independently derive or reverse engineer the product. (See *Moore v. Kulicke & Soffa Industries, Inc.* (3d Cir. 2003) 318 F.3d 561, 567.)

██ Evidence of independent derivation or reverse engineering directly refutes the element of use through improper means. Thus, a party that claims it independently derived or reverse engineered a component does not introduce "new matter" or an affirmative defense, but a traverse. (See *Rancho Santa Margarita v. Vail, supra,* 11 Cal.2d at p. 543 ["A plea controverting the original cause of action and tendering no new issue is a mere traverse and cannot be properly described as a plea setting up new matter"]; *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 698 [32 Cal.Rptr.2d 635] [" 'Where, however, the answer sets forth facts showing some essential allegation of the complaint is not true, such facts are not "new matter," but only a traverse. [Citation.]' "].)

B

Even if the UTSA does not require placing the burden of proof for reverse engineering or independent derivation on Able, Sargent Fletcher argues the trial court should have placed it there because Able is in a better position to bear that burden.

"On rare occasions, the courts have altered the normal allocation of the burden of proof." (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.* (2003) 107 Cal.App.4th 1336, 1346 [133 Cal.Rptr.2d 207].) In evaluating whether to shift the normal allocation of the burden of proof, " 'the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact.' " (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 660–661 [25 Cal.Rptr.2d 109, 863 P.2d 179], quoting Cal. Law. Revision Com. com., 29B West's Ann. Evid. Code (1996 ed.) § 500, p. 431.) But the exceptions are few, and narrow.

██ Courts shift the burden of proof for causation when it is *impossible* for the plaintiff to prove its case otherwise. (*Summers v. Tice* (1948) 33 Cal.2d 80, 88 [199 P.2d 1] [court placed burden of proof for causation on defendants where the plaintiff could not prove which of two hunters fired the shot that struck him]; *Haft v. Lone Palm Hotel* (1970) 3 Cal.3d 756, 771–772 [91 Cal.Rptr. 745, 478 P.2d 465] [court placed burden of proof for causation on hotel that failed to provide statutorily required lifeguard because its statutory violation not only endangered victims, but deprived plaintiffs of witness to establish causation]; *Sindell v. Abbott Laboratories* (1980) 26 Cal.3d 588, 612–613 [163 Cal.Rptr. 132, 607 P.2d 924] [court shifted burden of proof for causation onto defendants to exculpate themselves where drug they manufactured (DES) injured plaintiffs in utero and fungibility of drug

made causation impossible to prove, but court required plaintiff join substantial share of potentially liable drug manufacturers, and limited each defendant's liability to extent of its market share]; *Galanek v. Wismar* (1999) 68 Cal.App.4th 1417, 1428 [81 Cal.Rptr.2d 236] [court placed burden of proof for causation on attorney in malpractice case where attorney's negligence in handling underlying case made it impossible to prove causation in malpractice claim]; but see *Thomas v. Lusk* (1994) 27 Cal.App.4th 1709, 1718–1719 [34 Cal.Rptr.2d 265] [court refused to place the burden of proof for causation on attorney in malpractice action because attorney's error in underlying case did not make it impossible for plaintiff to prove case and attorney was not singularly responsible for loss of evidence]; *Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 977–978, 983 [67 Cal.Rptr.2d 16, 941 P.2d 1203] [court refused to shift burden of proof for causation to defendant where it was not impossible for plaintiff to prove causation of asbestos-related cancer in light of relaxed standard for causation in these cases (the substantial factor standard)].)

In design defect-products liability cases, " 'once the plaintiff makes a prima facie showing that the injury was proximately caused by the product's design, the burden should appropriately shift to the defendant to prove, in light of the relevant factors, that the product is not defective.' " (*Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 119 [184 Cal.Rptr. 891, 649 P.2d 224], quoting *Barker v. Lull Engineering Co.* (1978) 20 Cal.3d 413, 431, [143 Cal.Rptr. 225, 573 P.2d 443].) Courts have placed the burden of proof on defendants to demonstrate that a product design was not defective for policy reasons. Manufacturers have superior access to the technical information required to demonstrate the adequacy of the design under the required risk-benefit standard. But more importantly, courts place the burden of proof on defendants due to policy grounds relating to the strict liability doctrine. Since "one of the principal purposes behind the strict product liability doctrine is to relieve an injured plaintiff of many of the onerous evidentiary burdens inherent in a negligence cause of action," a manufacturer that relies on the risk-benefit standard to escape liability bears the burden of proof on that issue. (*Barker, supra,* at pp. 431–432; see also *Harris v. Irish Truck Lines, Inc.* (1974) 11 Cal.3d 373, 378 [113 Cal.Rptr. 489, 521 P.2d 481] [defendant who possessed vehicle before and after accident had burden of proving brake failure not caused by its failure to keep brakes in good working order].)

Greater access to relevant evidence does not mandate that a defendant bear the burden of proof on the issue. The res ipsa loquitor rule provides an illustration. That doctrine shifts the burden of producing evidence so that plaintiffs may bring tort claims even though they lack specific proof that their injury was caused by negligence of a defendant. (See *Ybarra v. Spangard* (1944) 25 Cal.2d 486, 489 [154 P.2d 687] [plaintiff awoke with his arm

paralyzed after appendectomy during which he was unconscious due to anesthesia]; *Byrne v. Boadle* (1863) 159 Eng.Rep. 299, 300 [barrel of flour rolled out of window in defendant's warehouse onto plaintiff], as cited in *Brown v. Poway Unified School Dist.* (1993) 4 Cal.4th 820, 825–826 [15 Cal.Rptr.2d 679, 843 P.2d 624].) "In California, the doctrine of res ipsa loquitur is defined by statute as 'a presumption affecting the burden of producing evidence.' (Evid. Code, § 646, subd. (b).)" *(Ibid.;* see *Ybarra v. Spangard, supra,* 25 Cal.2d 486, 489, quoting Prosser on Torts.) Thus, though the plaintiff has no access to the information concerning the cause of his or her injury other than through judicial discovery, the res ipsa loquitor doctrine provides a presumption of negligence, but the burden of proof remains with the plaintiff throughout the trial. (See *Kilgore v. Brown* (1928) 90 Cal.App. 555, 558 [266 P. 297].)

Courts have refused to shift the burden of proof in other cases where plaintiffs lacked access to information, even though the information was more readily available to the defendant. Thus, in employment discrimination cases, courts place the burden of proof on the employee to demonstrate an employer's discriminatory intent. *(Sada v. Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 149–150 [65 Cal.Rptr.2d 112].) " 'If the employee establishes a prima facie case, "the employer must offer a legitimate reason for his actions ...." ... However, the burden of persuasion never shifts to the employer; it remains at all times with the employee .... "If the plaintiff establishes a prima facie case, the defendant bears only a burden of going forward with additional evidence of legitimate nondiscriminatory reasons. The defendant does not take on a burden of persuasion." ' " *(Ibid.)* And in *Saelzler v. Advanced Group 400*(2001) 25 Cal.4th 763, 779–781 [107 Cal.Rptr.2d 617, 23 P.3d 1143], the court refused to shift the burden of proof to defendant landlord to establish that a violent assault on a person delivering a package to a tenant was not caused by failure of the defendant to provide premises security. (See also *Charach v. Lansing* (1951) 106 Cal.App.2d 735, 736–737 [236 P.2d 1] [burden of proof on plaintiff tenant to show apartment was rent controlled even though the information was more likely to be in defendant landlord's possession]; *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 144–145, [80 Cal.Rptr.2d 126] [plaintiff bears burden of proof to show defendant's intent to create an easement].)[2]

---

[2] We note, finally, the line of cases, unique to the context in which they arise, holding that in a prosecution for practicing a trade or profession or operating a business without a required license or authorization, the defendant bears the burden of proof to show he or she holds a valid license or other authorization. *(People v. Boo Doo Hong* (1898) 122 Cal. 606, 608–609 [55 P. 402]; *In re Shawnn F.* (1995) 34 Cal.App.4th 184, 197–199 [40 Cal.Rptr.2d 263].) This is because " 'the party, if licensed, can immediately show it without the least inconvenience; whereas, if proof of the negative were required, the inconvenience would be very great.' " *(People v. Boo Doo Hong, supra,* at p. 608.) In contrast, the defendant in a trade secret case cannot prove reverse engineering or independent derivation "without the least inconvenience."

In summary, exceptions to the general rule placing the burden of proof for prima facie elements on defendants are made when it is otherwise impossible for the plaintiff to make its case, and when policy considerations support affording the plaintiff greater protection. The rationale of these exceptions do not apply to the case before us.

First, unlike *Summers v. Tice* where the plaintiff could never prove which defendant caused his injury, it is not impossible for a plaintiff suing for misappropriation of its trade secret to prove, through civil discovery and its own experts, that the defendant used the trade secret through improper means. The plaintiff can introduce a variety of evidence to raise an inference of improper use: it can demonstrate that defendant had access to its trade secret; that the defendant's design mirrors the plaintiff's design; that the defendant could not have discovered the intricate details of the plaintiff's design independently or through reverse engineering from publicly available material; that the defendant's design configuration is one of many that were possible and matches the plaintiff's design; or that the defendant designed the product in less time than typically required to complete the trial and error process of independent derivation or reverse engineering. During its case-in-chief, a plaintiff is not required to prove improper use by presenting evidence specifically refuting reverse engineering or independent derivation, but it may choose to do so since use and nonuse are opposite sides of the same coin. Once credible evidence is presented to establish improper use by the defendant, the burden of producing evidence shifts to the defendant.

Second, the level of access to information and policy considerations do not require shifting the burden of proof in trade secret cases. Defendants almost always are in a better position to know what they did and why they did it. Liberal rules of discovery apply to even up that particular playing field. (See *Forthmann v. Boyer* (2002) 97 Cal.App.4th 977, 987–988 [118 Cal.Rptr.2d 715].) In design defect cases, the same rules of discovery apply, but courts place the burden of proof on the defendant to demonstrate the product is not defective, mainly because of the inequity that would result from requiring private citizens to engage in technical risk-benefit analysis to prove the product that injured them was defectively designed. (*Barker v. Lull Engineering Co., supra,* 20 Cal.3d at pp. 431–432.) In contrast to most design defect cases, plaintiffs in trade secret cases usually have access to technical experts who can interpret the information acquired in discovery, and the special policy issues presented in design defect cases do not apply.

Finally, no other strong public policy interest is suggested to mandate a burden shift to the defendant to prove it did not use the trade secret. Sargent Fletcher argues a failure to place the burden of proof to demonstrate reverse engineering or independent derivation on the defendant will squelch innovation by discouraging future teaming relationships. But as Able has argued, the

opposite may be true—placing the burden of proof on subcontractors might discourage them from entering into team relationships.

We find the trade secret situation more analogous to employment discrimination cases. In those cases, as we have seen, information of the employer's intent is in the hands of the employer, but discovery affords the employee the means to present sufficient evidence to raise an inference of discriminatory intent. The burden of proof remains with the plaintiff, but the defendant must then bear the burden of producing evidence once a prima facie case for the plaintiff is made. (*Sada v. Robert F. Kennedy Medical Center, supra,* 56 Cal.App.4th 138, 149.)

We conclude that the trial court correctly refused the proposed instruction that would have shifted the burden of proof.

## IV

Even were we to conclude the court should have given a burden-shifting instruction, we also would conclude that Sargent Fletcher was not prejudiced by the court's failure to do so in this case. ■ Only prejudicial error results in reversal of a judgment. Error is prejudicial when it is probable that the party against whom it was made would have achieved a better result but for the error. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 576 [34 Cal.Rptr.2d 607, 882 P.2d 298]; *Rutherford v. Owens-Illinois, Inc., supra,* 16 Cal.4th 953, 983.) To evaluate whether the error prejudicially affected the verdict, "[t]he reviewing court should consider not only the nature of the error, 'including its natural and probable effect on a party's ability to place his full case before the jury,' but the likelihood of actual prejudice as reflected in the individual trial record, taking into account '(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's arguments, and (4) any indications by the jury itself that it was misled.' " (*Rutherford,* at p. 983, quoting *Soule v. General Motors Corp., supra,* 8 Cal.4th at pp. 580–581; see also *Rutherford,* at p. 985 [no prejudice from incorrect refusal of instruction shifting burden of proof to defendant since defendant's ability to put its full case before the jury was not impaired].)

Refusal of the instruction did not interfere with Sargent Fletcher's ability to present its full case, as it did. In the seven-week trial, both parties presented voluminous documentary and testimonial evidence to demonstrate that Able did or did not use Sargent Fletcher's trade secrets. Each had a full opportunity to present its case.

Further, other instructions minimized any possible prejudice. The court instructed the jury on the elements of a claim for misappropriation of trade

secrets, stating that "Sargent Fletcher must prove, by a preponderance of the evidence" each of the elements of misappropriation, including "[t]hat Able acquired, used, or disclosed Sargent Fletcher's [trade] secret in an improper way." That instruction was followed by another that stated, "Able has not acted improperly and is not liable to Sargent Fletcher if Able designed its product through: 1. Its own, independent efforts to discover or invent the secret; or, 2. Reverse engineering. Reverse engineering is the process of beginning with a product a person lawfully possesses and taking it apart, examining it, or testing it to determine how it works." The court also instructed the jury that "Sargent Fletcher has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the essential elements of each of its claims. [¶] ... [¶] Able has the burden of proving by a preponderance of the evidence all of the facts necessary to establish the essential elements of defenses it has raised."

In fact, Able did shoulder the task of proving independent derivation and reverse engineering. This theme runs throughout the trial transcript. Even though, as a matter of law, the *burden of proof* to demonstrate independent derivation and reverse engineering did not lie with Able, in its opening statement, summation, and throughout the trial, Able argued and presented evidence that it independently developed and reverse engineered the device. The jury was instructed that Able bore the burden of proof for all the defenses it raised. It is highly unlikely that in such a complex case the jury would find the evidence to be in equipoise. Rather, it had to be persuaded one way or the other. Under the instructions it received, the jury would have to find for Sargent Fletcher unless it was convinced of the validity of Able's claims of independent derivation and reverse engineering by a preponderance of the evidence, or unless it refused to credit Sargent Fletcher's case-in-chief. Given the substantial prima facie showing made by Sargent Fletcher, the strong inference is that it was persuaded by a preponderance of the evidence that Able did not use Sargent Fletcher's trade secrets. The only other inference, that it simply did not credit the plaintiff's case-in-chief, is hardly helpful to Sargent Fletcher, as it could only lead to a defense verdict. Thus, no matter where the trial court placed the burden of proof, the verdict would have been the same. On this record, Sargent Fletcher was not prejudiced by the refusal of the trial court's instructions.

V*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1658.

## DISPOSITION

The judgment is affirmed.

Vogel (C.S.), P. J., and Curry, J., concurred.