**CALLAWAY GOLF COMPANY,**
**Plaintiff/Defendant–in–**
**Counterclaim,**

v.

**DUNLOP SLAZENGER GROUP AMERICAS, INC., d/b/a Maxfli, Defendant/Plaintiff–in–Counterclaim.**

No. CIV.A.01–669–KAJ.

United States District Court,
D. Delaware.

July 12, 2004.

Jack B. Blumenfeld, Morris, Nichols, Arsht & Tunnell, Wilmington, DE, for Plaintiff and Counter–Defendant.

David J. Ferry, Jr., Ferry, Joseph & Pearce, P.A., Wilmington, DE, for Defendant and Counter–Claimant.

## MEMORANDUM ORDER

JORDAN, District Judge.

### I. Introduction

Presently before me is a motion (D.I. 364) filed by Dunlop Slazenger Group Americas, Inc. d/b/a Maxfli ("Dunlop") seeking reconsideration of the May 13, 2004 Memorandum Opinion and Order (Docket Item ["D.I."] 358, 359) in which I granted Callaway Golf Company's ("Callaway") motion for partial summary judgment on Dunlop's counterclaim for misappropriation of trade secrets related to Dunlop's polyurethane golf ball technology. In a separately filed motion (D.I 366), Dunlop also seeks reconsideration of the part of my Opinion and Order dated May 18, 2004 (D.I.361, 362) in which I granted Callaway's motion for partial summary judgment on Dunlop's claims for negligent hiring, training, supervision, and/or retention of employees, conversion and unjust enrichment. I have jurisdiction over this case pursuant to 28 U.S.C. §§ 1331, 1338, and 1367. For the reasons that follow, the motions will be denied.

### II. Background

Because the factual and procedural history of this case is set forth in several prior rulings, *see* Memorandum Opinion dated May 13, 2004 (D.I.359), Memorandum Opinion dated May 18, 2004 (D.I.362), Memorandum Order dated May 18, 2004 (D.I.360), and Memorandum Order dated May 21, 2004 (D.I.363), it will not be repeated here. Rather, the facts pertinent to the motions currently before me are incorporated in the discussion below.

### III. Standard of Review

■ Motions for reconsideration should be granted only "sparingly." *Karr*

*v. Castle,* 768 F.Supp. 1087, 1090 (D.Del. 1991). In this district, motions for reconsideration are granted only if it appears that the court has patently misunderstood a party, has made a decision outside the adversarial issues presented by the parties, or has made an error not of reasoning, but of apprehension. *Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240 (D.Del.1990) (citing *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D.Va.1983)). "Courts should be particularly vigilant that motions for reargument or reconsideration are not used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Id.*

■ Further, a district court should grant a motion for reconsideration which alters, amends, or offers relief from a judgment only when: (1) there has been an intervening change in the controlling law; (2) there is newly discovered evidence which was not available to the moving party at the time of judgment; or (3) there is a need to correct a legal or factual error which has resulted in a manifest injustice. *See Max's Seafood Café by Lou Ann, Inc. v. Quinteros,* 176 F.3d 669, 677 (3d Cir. 1999) (citation omitted).

### IV. Discussion

#### A. Reconsideration of the May 13, 2004 Opinion and Order

Dunlop argues that I should reconsider and vacate the May 13, 2004 Memorandum Opinion and Order (D.I.358, 359) because my decision "was based on a clear error of law and that the decision, unless corrected, would work manifest injustice." (D.I. 365 at 2, 9.) Specifically, Dunlop asserts that I based my decision to grant Callaway's motion for partial summary judgment "on a clearly incorrect view of the test for trade

secret misappropriation under the California Uniform Trade Secrets Act." (*Id.*)

Dunlop's argument is not well founded for several reasons. First, Dunlop criticizes me for applying the very standard that Dunlop advocated in its opposition to Callaway's motion for partial summary judgment. In response to Callaway's assertion that it was not liable for trade secret misappropriation because it did not use[1] Dunlop's trade secrets regarding polyurethane technology, Dunlop countered that Callaway did use its trade secrets and that the proof of such use is that the RULE 35 golf ball and its progeny bore a "substantial identity" and "substantial similarity" to its polyurethane technology and was a substantial derivation from that technology.[2] Dunlop's arguments were unpersuasive, and I held, in part,[3] that Callaway did not use, and thus did not misappropriate, Dunlop's polyurethane technology trade secrets, even if they were trade secrets, because no reasonable fact finder could conclude from the available evidence that Callaway's '024 patent and polyurethane golf balls were substantially derived from the formulas and processes described in the February 1997 patent application and Dewanjee's Dunlop notebooks. (D.I. 359 at 17–18.)

Understandably dissatisfied with my ruling, Dunlop now asserts that I applied an incorrect standard. (D.I. 365 at 2.) According to Dunlop, "[n]owhere in [CUTSA] or applicable case law is there any requirement that plaintiff prove that defendant made a substantially similar product." (*Id.* at 3) (citing *Sargent Fletcher, Inc., v. Able Corp.*, 110 Cal.App.4th 1658, 3 Cal.Rptr.3d 279, 283 (2003) (stating that "a prima facie claim for misappropriation of trade secrets requires that the plaintiff demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff")). While I agree that proof that a defendant made a substantially similar

---

**1.** As discussed in the May 13, 2004 Memorandum Opinion, misappropriation under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ.Code § 3426.1(b), is defined as "[a]cquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means," or "[d]isclosure or use of a trade secret without express or implied consent . . . ." (D.I. 359 at 14–15.)

**2.** Dunlop took this position in both its opposition papers and at oral argument. For example, in its brief Dunlop stated, "Under well-established principles, adopted by California, a trade secret misappropriation claim only requires a showing of 'substantial identity' or 'substantial similarity' between the technologies of the plaintiff and defendant at issue." (D.I. 338 at 32) (citing *Integral Systems, Inc. v. Peoplesoft, Inc.*, No. C–90–2598–DLJ, 1991 WL 498874 (N.D.Cal. July 19, 1991)). Dunlop also argued that "whether the Callaway polyurethane technology at issue bears a 'substantial similarity' with Dunlop's polyurethane technology . . . is for the jury." (D.I.

338 at 33.) With regard to its claim that the '024 patent was based on its trade secrets, Dunlop said that "[t]here is substantial similarity between the '024 patent and the proprietary information Dewanjee acquired from Dunlop, such that Callaway is not entitled to summary judgment on the issue." (*Id.* at 31.)

At oral argument, Dunlop's counsel stated "essentially, we believe that the standard before the Court under summary judgment, given the fact that all we have to do is show a substantial derivation, you know, we have competent evidence in the record and circumstantial evidence for a jury to make the determination that this final formula by Callaway [was substantially derived] . . . ." (D.I. 357 at 19–20.)

**3.** I also held that, as a matter of law, Dunlop had not established any trade secrets involving PPDI and had not presented any evidence that a three-piece golf ball with a polyurethane cover was its trade secret. (D.I. 359 at 11, 18.) Dunlop does not challenge those rulings in its motion for reconsideration.

product is not required to establish a prima facie case of misappropriation of trade secrets, to claim that I have applied an incorrect standard when it is the very standard that Dunlop presented to me is not a proper use of a motion for reconsideration. A motion for reconsideration should not be "used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided." *Brambles*, 735 F.Supp. at 1240. Dunlop argued that it was use, evidenced by substantial similarity, that demonstrated misappropriation in this case. (D.I. 338 at 32–33.) They failed to meet Callaway's summary judgment challenge in that regard, but that ought not reopen the entire field of trade secret law for argument.

 Nevertheless, Dunlop argues that evidence that a defendant's product bears a substantial identity with the trade secret is just "one method of proving trade secret misappropriation," but "is not the exclusive way of doing so." (D.I. 365 at 2.) Dunlop claims that a plaintiff may also establish a misappropriation claim by unlawful acquisition or disclosure. (*Id.* at 3.) I agree with this proposition and, indeed, cited the section of CUTSA in the May 13, 2004 Memorandum Opinion, that defines "misappropriation" as the acquisition, use, or disclosure of a trade secret of another by improper means. (D.I. 359 at 14) (quoting Cal Civ.Code § 3426.1(b)). While I found that a reasonable fact finder could conclude that Dewanjee took some information with him when he left Dunlop (D.I. 359 at 9), the evidence submitted by Dunlop was, at most, a scintilla of evidence that Callaway improperly acquired Dunlop's polyurethane technology trade secrets.[4] But, a mere scintilla is insufficient to deny a motion for summary judgment. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

More importantly, on the issue of improper acquisition, Dunlop has not submitted any new evidence that was not available to them at the time of judgment. *See Max's Seafood Café*, 176 F.3d at 677. Moreover, Dunlop has never claimed, either in its pleadings or in its opposition to Callaway's motion for summary judgment, that Callaway improperly disclosed Dunlop's trade secrets to a third party.[5] As previously discussed, a motion for reconsideration should not be used to argue new facts. *See Brambles*, 735 F.Supp. at 1240.

 Finally, Dunlop argues that there are other ways of proving use of a trade secret than showing that a defendant's product was substantially similar to a plaintiff's trade secret. (D.I. 365 at 4.) For example, Dunlop asserts that it is "well established that use of another's trade secret in the course of research and development alone is actionable, even if the product produced by the defendant contains modifications or improvements on the original trade secret." (*Id.* at 5) (citing *Reingold v. Swiftships*, 126 F.3d 645, 651) (5th Cir.1997), *Mangren Research & Dev. Corp. v. Nat'l Chem. Co., Inc.*, 87 F.3d 937, 944 (7th Cir.1996), Restatement (Third) of Unfair Competition (1995) § 40, comment c.

I do not disagree with that proposition. However, Dunlop has never explained how Callaway could have used its trade secret

4. In its opposition to Callaway's motion for summary judgment, Dunlop did not argue that Callaway improperly acquired its trade secrets. (D.I.338.) Dunlop made some statements in its background section that may imply that Callaway, through Dewanjee, improperly acquired its trade secrets, but once again, that issue was not addressed in Dunlop's argument.

5. Callaway, not Dewanjee, is the target of Dunlop's claims in this case.

information, i.e., its unique combination of ingredients, in the course of developing golf ball cover formulas that are not substantially similar to that combination. Instead, Dunlop argues in the abstract that expert testimony is probative on use of trade secrets. (D.I. 365 at 7). Dunlop also argues that "direct evidence of use of Dunlop's technology (for example, Dewanjee's June 1997 use of Dunlop's confidential patent application)" is probative on Callaway's use of Dunlop's trade secrets. (D.I. 365 at 7.)

■ While expert testimony may, in fact, be probative on whether trade secrets were used, the testimony of Dr. Klempner, Dunlop's expert, corroborates Callaway's argument that it did not use Dunlop's trade secrets in the course of developing its golf ball covers. The only evidence of a potential trade secret or secrets offered by Dunlop pertains to a combination of E–300, E–100, PTMEG, and TDI. (D.I. 359 at 13 n. 12.) Accordingly, Dunlop was required to offer some proof that Callaway actually used this combination of ingredients. However, it is undisputed that Callaway did not use either E–100 or PTMEG (D.I. 359 at 17), and Dr. Klempner testified that Dunlop did not research whether TDI and E–300, which I found are well known and in the public domain (*Id.* at 16), would work with the other ingredients that Callaway used in its cover formulations. (D.I. 314, Ex. F at 88–89, 97–98, 113–114, 150, 152.) Therefore, as Callaway accurately points out, Dunlop has failed to put forth any evidence that shows that Callaway used, in any way, the combination of ingredients that Dunlop claims are its trade secrets. (D.I. 368 at 13.)

With respect to Dewanjee's use of the formulas and processes described in Dunlop's February 1997 patent application, which covers a "TDI prepolymer cured with a blend of E–300 and E–100 curity," in light of the fact that Callaway did not use E–100 in its final formulations and that the process of blending E–300 and TDI, two commonly known ingredients in the industry, is generally known in the industry, Dunlop has never identified how Callaway used Dunlop's proprietary blend in developing its golf ball covers. *See Pulsecard, Inc. v. Discover Card Svcs, Inc.,* Civ. No. 94–2304–EEO, 1996 WL 137819 (D.Kan. March 5, 1996) (granting summary judgment because plaintiff pointed to no evidence that defendant used the alleged trade secret). Accordingly, Dunlop's motion seeking reconsideration of the May 13, 2004 Memorandum Opinion and Order must be denied.

**B. Reconsideration of the May 18, 2004 Memorandum Order**

Dunlop argues that reconsideration of the May 18, 2004 Memorandum Order "should be granted because the Court's 'substantially similar' determination is based on a clearly incorrect view that a plaintiff whose trade secrets have been stolen may only prove trade secret misappropriation by establishing that the defendant's product is substantially similar to, or substantially derived from, the plaintiff's product." (D.I. 367 at 2.) Because this contention is the same as Dunlop's argument made with respect to the May 13, 2004 Memorandum Opinion, and has been fully addressed above, Callaway's Motion that I reconsider and vacate the May 18, 2004 Memorandum Opinion and Order must also be denied.

**V. Conclusion**

Accordingly, IT IS HEREBY ORDERED that Dunlop's motions for reconsideration (D.I.364, 366) are denied.