Filed 11/13/13  Spot Water Management v. Plageman CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| SPOT WATER MANAGEMENT, INC., | D059270 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. Nos. 37-2009-00052285-CU-JR-NC; 37-2009-00060105-CU-BT-NC) |
| KEVIN PLAGEMAN, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of San Diego County,

Jacqueline M. Stern and Thomas P. Nugent, Judges.  Affirmed.

Caryn N. Fabian, for Plaintiff and Appellant.

Zeldes & Haeggquist, Alreen Haeggquist and Aaron M. Olsen, for Defendants and

Respondents.

Spot Water Management, Inc. (SWM) appeals (1) judgment entered after the

court's order granting summary adjudication against SWM on its claim for breach of

contract against Plageman and claim for misappropriation of trade secrets against

Plageman's business partner, Craig Zellers, and Zellers's and Plageman's current business,

Zellers-Plageman Just Add Water, LLC (Just Add Water); (2) evidentiary rulings related to the motion for summary judgment; (3) judgment for Plageman entered after a bench trial on SWM's remaining claim for misappropriation of trade secrets and its appeal to the trial court of the labor commissioner's order in Plageman's favor; and (4) postjudgment orders awarding attorney fees to Plageman, Zellers and Just Add Water. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

SWM is a San Jose based company that provides irrigation and other water related services primarily to golf courses and other commercial properties in California. The firm is owned and operated by Andy Slack. Plageman was hired by Slack as an irrigation design associate in March 2006. At the time he was hired, Plageman had worked in the irrigation industry for several years and was experienced in the various software programs used by SWM. The terms of Plageman's employment by SWM were set forth in a letter agreement from Slack and signed by Plageman. The agreement provided for an annual salary of $30,000 and required Plageman to keep SWM proprietary information confidential during and after his employment. Though not set forth in the agreement, Plageman was also eligible for quarterly bonuses and commissions for work he brought to SWM.

The agreement prohibited Plageman from "engag[ing] in any other business activity, directly or indirectly, regardless of whether it is for profit, gain or otherwise that is similar to the business activity of [SWM] unless [he] received written approval." Despite this provision, Slack approved of Plageman completing a number of outstanding

2

projects for his prior employer after starting work for SWM. SWM provided Plageman with a laptop and Plageman worked primarily from his home office in San Diego and on-site at client locations. He did not submit time records and was paid every other week in equal installments regardless of the actual hours worked.

On January 9, 2008, Slack sent Plageman a lengthy e-mail questioning Plageman's commitment to SWM and requesting a meeting to discuss Plageman's future with the company. Plageman responded with an e-mail attaching a short letter of resignation and also called Slack with this news. The two met the following day and Plageman returned all SWM property to Slack. In February 2008, Plageman formed Just Add Water with Zellers.

After retrieving Plageman's SWM computer, Slack discovered that on January 10, 2008, Plageman had forwarded e-mails from his SWM inbox to his personal e-mail address and then deleted the e-mails from the inbox. Slack also found e-mails suggesting Plageman had done irrigation work outside of his employment with SWM without Slack's permission.

After Plageman resigned, SWM did not pay Plageman. As a result, Plageman filed a complaint with the Department of Labor Standards Enforcement (DLSE) against SWM seeking wages of $5,245.80, consisting of $922.88 in regular wages for his final pay period from January 1 to January 10, 2008, $4,230 for commissions and $92.92 in business expenses, plus penalties. On February 19, 2009 the labor commissioner found in favor of Plageman and awarded him $11,091.75 in wages, penalties and interest. The following month, SWM filed an appeal of that order in San Diego Superior Court. On

3

June 2, 2009, SWM filed a complaint in Santa Clara Superior Court against Plageman for breach of the employment agreement and against Plageman, Zellers and Just Add Water for misappropriation of trade secrets.[1] The case was transferred to San Diego and consolidated with SWM's appeal of the DLSE order.

After engaging in discovery, Plageman, Zellers and Just Add Water moved for summary judgment and summary adjudication of SWM's cause of action for misappropriation of trade secrets and breach of contract. The court granted Zellers's and Just Add Water's motion for summary judgment of SWM's misappropriation of trade secrets claim, but denied Plageman's motion with respect to that claim. The court granted Plageman's motion on the breach of contract cause of action, finding SWM's own failure to perform by not paying Plageman's salary from January 1, 2008 to January 10, 2008 foreclosed the claim.

SWM's remaining cause of action against Plageman for misappropriation of trade secrets and its appeal of the DLSE order proceeded to a bench trial before a different judge. After the conclusion of the two-day trial, the court issued a proposed statement of decision in Plageman's favor on all issues, except the commission portion of the DLSE order, which it reversed. The court entered two judgments, one in favor of Plageman and a second in favor of Zellers and Just Add Water based on the earlier summary judgment order.

---

[1] SWM brought other related claims that it later voluntarily dismissed and that are not relevant to this appeal.

4

Thereafter, Zellers and Just Add Water moved for attorney fees under Civil Code section 3426.4, and Plageman moved separately for attorney fees under the same provision and under Labor Code section 98.2. Zellers's and Just Add Water's motion was heard by the judge who ruled on the summary judgment motion, while Plageman's motion was heard by the trial judge. After two hearings on each attorney fee motion and the submission of supplementary evidence, both motions were granted. Plageman was awarded $43,881.25 in attorney fees and costs, while Zellers and Just Add Water received $29,737.

DISCUSSION

I

*SUMMARY JUDGMENT*

A. Standards

"Summary judgment is appropriate 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).)" (*San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1534 (*San Jose*).) A moving defendant "bears the initial burden to show that the action or cause of action has no merit—that is, 'that one or more elements of the cause of action, even if not separately pleaded, cannot be established, or that there is a complete defense to that cause of action.' (Code Civ. Proc., § 437c, subds. (a), (p)(2).)" (*San Jose, supra,* at p. 1534.) If the defendant does not meet this initial burden, "it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied." (*Ibid.*)

5

If, however, the defendant "carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "The plaintiff . . . may not rely upon the mere allegations or denials of its pleadings to show that a triable issue of material fact exists, but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to that cause of action. . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

"On appeal, we conduct a de novo review of the record to 'determine with respect to each cause of action whether the defendant seeking summary judgment has conclusively negated a necessary element of the plaintiff's case, or has demonstrated that under no hypothesis is there a material issue of fact that requires the process of trial, such that the defendant is entitled to judgment as a matter of law.' [Citation.]" (*San Jose, supra,* 155 Cal.App.4th at p. 1535.) As in the trial court, "[w]e examine the pleadings to ascertain the elements of the plaintiff's claim; the moving papers to determine whether the defendant has established facts justifying judgment in its favor; and, if the defendant did meet this burden, plaintiff's opposition to decide whether he or she has demonstrated the existence of a triable issue of material fact." (*Ibid*.)

"In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing her evidentiary submission while strictly scrutinizing defendants' own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor." (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.) "We need not defer to the trial court and are not bound by the reasons for the

6

summary judgment ruling; we review the ruling of the trial court, not its rationale."

(*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 85.)

### B. Breach of Contract

SWM's complaint asserts Plageman breached his employment agreement both by misappropriating SWM's trade secret information and by engaging in the same business as SWM while employed there without obtaining Slack's approval. Plageman moved for summary judgment of SWM's cause of action for breach of contract on the grounds that SWM's failure to fulfill its obligation to pay Plageman his salary for his final 10 days of employment foreclosed the claim. In opposition, SWM argued a disputed factual issue existed as to whether it was required to pay Plageman because SWM alleged Plageman did not provide any services during that period.

The trial court rejected SWM's argument, finding SWM failed to present any evidence contradicting its obligation to pay Plageman his wages: "Plageman was a salaried employee, was ready, willing and able to perform work from Jan[uary] 1, 2008 to Jan[uary] 10, 2008[,] actually performed work during that period, and was therefore entitled to receive his full salary for that week. (See 29 [C.F.R. § 541.602(a)[.])" The court concluded in "light of the uncontroverted evidence showing Plaintiff failed to perform, it cannot prevail . . . as a matter of law."

SWM does not dispute that to overcome summary adjudication of its breach of contract claim, it was required to show prima facie evidence of (1) the existence of a valid contract, (2) its performance of the contract or excuse for nonperformance, (3) Plageman's breach, and (4) damages. (*Walsh v. West Valley Mission Community College*

7

*Dist.* (1998) 66 Cal.App.4th 1532, 1545.)  SWM argues here, as it did in the trial court, that summary judgment was not appropriate because it presented evidence disputing its obligation to pay Plageman's final salary installment.[2]

SWM contends Slack's declaration and Plageman's own deposition testimony showed that whether SWM was required to pay Plageman from January 1 to January 10, 2008 was disputed.  Specifically, SWM points to Slack's statements that (1) he "questioned Defendant Plageman what services he had provided for SWM since January 1, 2008," (2) his attorney "further questioned [Plageman's] attorney regarding what services were performed because SWM intended on paying Plageman for services rendered," and (3) he searched "Plageman's returned company computer and checked his cell phone bill to determine what services were provided to SWM since January 1, 2008 and was unable to find any evidence of work. . . ."  SWM also argues "Plageman's own deposition testimony" was "that he not did not perform any of his duties after December 31, 2007."[3]

---

[2] SWM focuses solely on whether it was obligated to pay wages.  It does not argue that even if its failure to pay wages constitutes nonperformance, its breach of contract claims should not have been foreclosed in this case.  Because SWM does not advance this argument, we decline to address it here.  (See *Sprague v. Equifax, Inc.* (1985) 166 Cal.App.3d 1012, 1050 ["The reviewing court is not required to make an independent, unassisted study of the record in search of error or grounds to support the judgment.  It is entitled to the assistance of counsel.  Accordingly every brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration."].)

[3] The actual deposition testimony SWM cites, however, is that Plageman did not recall if he worked on any AutoCAD projects, GPS mapping, field staking, computer programming, or central map creations from January 1 to January 9, 2008.  He was

8

Plageman responds that despite this evidence, there was no dispute he was entitled to his salary for the period of time from January 1 to January 9, 2008 under the applicable labor regulations. The regulation cited by the court in its order, 29 Code of Federal Regulations part 541.602(a) (2004), provides that "an exempt employee must receive the full salary for any week in which the employee performs any work without regard to the number of days or hours worked." SWM does not dispute that Plageman was an exempt employee entitled to an annual salary of $30,000 under his employment agreement with SWM and that it failed to pay him for this period.

In support of his argument that SWM's evidence did not contradict his entitlement to his final wages, Plageman points to the fact that during his tenure with SWM, when there was not a specific project to work on, he was paid so long as he was available to answer phone calls and check e-mails. Plageman testified this was the case from January 1 to January 9, 2008. Plageman also points to Slack's January 9, 2008 e-mail concerning Plageman's performance, which details a number of work-related telephone calls between Slack and Plageman during the period in question and Plageman's January 10, 2008 meeting with Slack to return his company computer and other property.

We agree with Plageman that SWM's evidence concerning what work Plageman did (or did not do) in his final days of employment did not create a material factual dispute concerning Plageman's entitlement to his final installment of salary. Slack's declaration and Plageman's testimony that he (Plageman) did not recall what services he

unsure if he made any telephone calls during this period, and he went to a storage facility to retrieve SWM property to return to Slack on January 10, 2008.

9

provided to SWM addressed Plageman's level of productivity during that time. Even if true, these facts did not contradict Plageman's testimony that he was available to work from January 1 to January 9 and the e-mail from Slack in which Slack stated Plageman did *some* work during that period. Given these undisputed facts, under the terms of his employment agreement and the applicable labor regulations Plageman was entitled to salary for this period of employment.[4]

SWM also argues its withholding of Plageman's salary was not a breach of the employment agreement because the federal regulation and the DLSE's Enforcement Policies and Interpretations Manual (DLSE Manual) permit an employer to deduct pay when the employee "is absent from work for one or more full days, and [the employee] need not be paid for any workweek in which they perform no work."

While 29 Code of Federal Regulations part 541.602(a) (2004) does provide that "[e]xempt employees need not be paid for any workweek in which they perform no work," it goes on to state that "[i]f the employee is ready, willing and able to work, deductions may not be made for time when work is not available." The DSLE Manual provisions SWM relies on mirror the federal regulation. (DLSE Manual (March 2006) §§ 51.6.3.2, 51.6.14.3.) As explained, the uncontradicted evidence showed Plageman was ready, willing and able to work, and did work some, during the time period in question. SWM presented no evidence to support its claim that Plageman was absent and, therefore, not entitled to his salary under the regulation.

---

4     The court's subsequent affirmance of the DSLE order awarding Plageman wages after trial also supports this conclusion.

10

C. Misappropriation of Trade Secrets Against Just Add Water

"Under the [Uniform Trade Secret Act (UTSA)], a prima facie claim for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through improper means, and (3) the defendant's actions damaged the plaintiff." (*Sargent Fletcher, Inc. v. Able Corp.* (2003) 110 Cal.App.4th 1658, 1665.) The trial court granted summary judgment in favor of Zellers and Just Add Water, finding there was no triable issue of fact as to whether it "acquired, disclosed, or used any of Plaintiff's alleged trade secrets pursuant to Civil Code section 3426.1[](a) [and] (b)."[5]

SWM contends the court erred by concluding the evidence on this issue was uncontroverted because it presented facts disputing whether Just Add Water acquired

_____

[5] Civil Code section 3426.1 of the UTSA (Civ. Code, §§ 3426, et seq.) provides: "Definitions. As used in this title, unless the context requires otherwise: [¶] (a) 'Improper means' includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. Reverse engineering or independent derivation alone shall not be considered improper means. [¶] (b) 'Misappropriation' means: [¶] (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or [¶] (2) Disclosure or use of a trade secret of another without express or implied consent by a person who: [¶] (A) Used improper means to acquire knowledge of the trade secret; or [¶] (B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was: [¶] (i) Derived from or through a person who had utilized improper means to acquire it; [¶] (ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or [¶] (iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or [¶] (C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake."

11

SWM's trade secrets by improper means.6 In support of this argument, SWM identifies: (1) e-mails Plageman forwarded from his SWM e-mail account to his personal e-mail account on January 10, 2008; (2) Plageman's deposition testimony he worked on side projects while employed by SWM; (3) Plageman's deposition testimony that his job duties at Just Add Water included sales and procuring clients; and (4) Zellers's deposition testimony to the same effect.

Assuming as the trial court did that SWM had trade secrets, to overcome summary judgment SWM was required to establish a prima facie case that each defendant "acquired, disclosed, or used the plaintiff's trade secret through improper means." (*Sargent Fletcher, Inc. v. Able Corp., supra*, 110 Cal.App.4th at p. 1665.) None of the facts identified by SWM, however, support its contention that Just Add Water obtained, disclosed or used any alleged trade secret of SWM.

With respect to Plageman's act of e-mailing SWM's alleged trade secrets to himself, even if it violated the UTSA, it was not evidence of misconduct by Just Add Water, which had not yet been formed. Likewise, Plageman's testimony he worked on side projects while employed by SWM bears no relationship to his later-formed business. The other evidence, which SWM argues created a factual dispute as to whether Plageman brought clients from SWM to Just Add Water, also did not raise triable issues of fact with respect to whether Just Add Water's misappropriated SWM's trade secrets. In addition to

---

6    SWM also contends there was a triable issue of fact with respect to Zellers's misappropriation of trade secrets. SWM, however, voluntarily dismissed Zellers prior to the court's ruling, rendering moot SWM's appeal of the dismissed claim against Zellers.

relating only to Plageman's conduct, the evidence SWM points to (that one of Plageman's job duties at Just Add Water was sales) did not show Just Add Water used trade secret information in its efforts to secure new business, or that any client left SWM for Just Add Water. We find no error in the trial court's finding that SWM failed to establish a prima facie case of misappropriation of trade secrets by Just Add Water.

## D. Evidentiary Ruling

SWM contends the trial court erred by sustaining Plageman's objection to statements in Slack's declaration in support of its opposition to Plageman's motion for summary judgment. In the declaration, Slack stated he "attended the Golf Course Superintendents Association of Northern California (GCSANC) Annual Superintendents Institute Meeting in the fall of 2008. I saw the Del Mar Country Club Irrigation As-Built displayed by Zellers-Plageman Just Add Water at the meeting. The displayed As-Built appeared to be prepared using the same software, codes, and symbols as those used by SWM."[7] Plageman objected to these statements on the numerous grounds: lack of foundation; violation of the best evidence rule; lack of personal knowledge; improper expert testimony; and that the statements were contrary to prior sworn testimony. The court sustained the lack of foundation, best evidence and lack of personal knowledge objections.

"On a summary judgment appeal, we review the trial court's evidentiary ruling for abuse of discretion. [Citations.] ' "Discretion is abused whenever, in its exercise, the

---

[7] An "as-built" is an irrigation design plan or drawing created using AutoCAD, which is a computer-aided design program.

13

court exceeds the bounds of reason, all of the circumstances before it being considered." ' [Citation.]" (*Jennifer C. v. Los Angeles Unified School Dist.* (2008) 168 Cal.App.4th 1320, 1332.) "The trial court's error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a 'miscarriage of justice'—that is, that a different result would have been probable if the error had not occurred." (*Zhou v. Unisource Worldwide* (2007) 157 Cal.App.4th 1471, 1480.)

We find no abuse of discretion in the court's ruling with respect to Slack's statements. As Plageman points out, in pursuing its claim for misappropriation of trade secrets, SWM took the position throughout the litigation that sharing a final "as-built" drawing does not disclose the software or codes used to create it. Slack, therefore, could not have had personal knowledge concerning whether the "Del Mar Country Club Irrigation As-Built" was "prepared using the same software, codes, and symbols as those used by SWM" by simply viewing the drawing.

II

*TRIAL*

A. SWM's Appeal of the Labor Commissioner's Order

*1. Evidentiary Ruling*

SWM contends the court committed prejudicial error by refusing to hear certain evidence on the issue of Plageman's entitlement to wages with respect to its appeal of the labor commissioner's order. In its ruling granting summary judgment in favor of Plageman on SWM's breach of contract cause of action, the court found "Plageman was a salaried employee, was ready, willing and able to perform work from Jan[uary] 1, 2008

14

to Jan[uary] 10, 2008[,] actually performed work during that period, and was therefore entitled to receive his full salary for that week." During trial, the court limited SWM's counsel's from asking Plageman what work he did during the period in question. The court stated the finding on the motion for summary judgment concerning the issue was binding and SWM would not be permitted to ask questions intended to contradict that finding. We find no prejudicial error in this ruling.

"Trial court rulings on the admissibility of evidence . . . are generally reviewed for abuse of discretion." (*Pannu v. Land Rover North America, Inc.* (2011) 191 Cal.App.4th 1298, 1317.) An " 'error in excluding evidence is grounds for reversing a judgment only if the party appealing demonstrates a "miscarriage of justice"—that is, that a different result would have been probable if the error had not occurred.' " (*Ibid*.) In addition, "summary adjudication of an issue under Code of Civil Procedure section 437c is a judicial determination that the issue is not subject to further controversy in the action and is deemed established at the most critical stage of the action, the trial. Summary adjudication of issues has the same evidentiary effect as a summary judgment except that it does not determine all the material issues in the action and thus precipitate entry of judgment." (*Abadjian v. Superior Court* (1985) 168 Cal.App.3d 363, 370.)

The court's order granting summary adjudication of SWM's breach of contract claim, which was based on the court's finding that Plageman was ready, willing and able to work, and did work, during the period in question, was entitled to binding effect at trial. (*Abadjian v. Superior Court, supra,* 168 Cal.App.3d at p. 370.) SWM argues it should not have been foreclosed from relitigating the amount of work Plageman did from

15

January 1 to January 10, 2008 because "Plageman's entitlement to wages [was] not addressed in the motion for summary judgment/adjudication" and "the number of hours or days Plageman worked was never even mentioned."

The basis for Plageman's motion seeking summary adjudication of SWM's breach of contract claim was Plageman's entitlement to his full salary for the last 10 days of his employment and SWM's failure to pay that amount. Contrary to SWM's assertion, both parties presented evidence concerning whether Plageman was ready, willing and able to perform work, and whether he actually performed work, during this period. SWM did not present any evidence that Plageman completely absented himself from work during the relevant time. As discussed above, the court properly found that as an exempt employee Plageman was entitled to his full salary for that period. As with SWM's breach of contract claim, the precise number of hours or days Plageman worked was irrelevant to what wages he was entitled for purposes of the labor commissioner's order. The exclusion of Plageman's testimony related to precisely what work he did during this period did not, therefore, prejudice SWM.

### 2. Labor Code Penalties

The court affirmed the labor commissioner's award of waiting time penalties, concluding there was no good faith dispute as to these damages. SWM contends there was insufficient evidence to support the award. We disagree.

When an appellant asserts there is insufficient evidence to support the court's factual finding, we apply the substantial evidence standard of review. "Where findings of fact are challenged on a civil appeal, we are bound by the 'elementary, but often

16

overlooked principle of law, that . . . the power of an appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted,' to support the findings below.  [Citation.]  We must therefore view the evidence in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving all conflicts in its favor in accordance with the standard of review so long adhered to by this court."  (*Jessup Farms v. Baldwin* (1983) 33 Cal.3d 639, 660.)

An award of waiting penalties is governed by Labor Code section 203.  That statute provides that "[i]f an employer willfully fails to pay . . . any wages of an employee . . . who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  (Lab. Code, § 203, subd. (a).) " '[T]o be at fault within the meaning of [Labor Code section 203], the employer's refusal to pay need not be based on a deliberate evil purpose to defraud workmen of wages which the employer knows to be due.  As used in [Labor Code] section 203, "willful" merely means that the employer intentionally failed or refused to perform an act which was required to be done.' "  (*Armenta v. Osmose, Inc.* (2005) 135 Cal.App.4th 314, 325; italics omitted.)

SWM argues there was no evidence its failure to pay Plageman was willful within the meaning of the statute.  In support SWM selectively points to Slack's testimony that "Plageman told [him] that he had not done anything since the first of the year" and that he had "not found any evidence of work completed by Plageman" during his final 10 days of

17

work.  SWM, however, improperly ignores unfavorable evidence supporting the award of waiting penalties.  (See *Citizens for a Megaplex-Free Alameda v. City of Alameda* (2007) 149 Cal.App.4th 91, 112-113 ["an appellant must set forth in its brief all material evidence on the point, not merely its own evidence.  [Citation.]  A failure to do so is deemed a concession that the evidence supports the findings."].)

Specifically, Slack's January 9, 2008 e-mail to Plageman detailing work-related calls between them and Plageman's January 10, 2008 meeting with Slack demonstrated Slack knew Plageman was not absent from work and was, therefore, entitled to payment of his salary.  This evidence was sufficient to support the trial court's finding that SWM did not have a good faith defense for its failure to pay, making the failure willful within the meaning of the statue.  (See *Davis v. Morris* (1940) 37 Cal.App.2d 269, 274 [" 'In civil cases, the word "willful," as ordinarily used in courts of law, does not necessarily imply anything blamable . . . but merely that the thing done or omitted to be done, was done or omitted intentionally.' "].)

### B.  Misappropriation of Trade Secrets by Plageman

SWM argues there was insufficient evidence to support the trial court's finding that Plageman did not misappropriate trade secrets.  SWM contends the evidence showed it derived independent economic value from the information at issue being secret and took reasonable efforts to maintain its secrecy.  The court's final statement of decision concludes SWM failed to "meet its burden of proving that it possessed trade secrets as defined in Civil Code section 3426 et seq."  The court further stated "the evidence established that the practices and procedures [at issue] are known to those educated

18

and/or experienced in the business of irrigation design. Plageman was undeniably such a person." This finding was supported by the record.

The UTSA defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: [¶] (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and [¶] (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." (Civ. Code, § 3426.1, subd. (d).) "The test for trade secrets is whether the matter sought to be protected is information (1) which is valuable because it is unknown to others and (2) which the owner has attempted to keep secret." (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1454 (*Whyte*).)

"The ultimate determination of trade secret status is subject to proof presented at trial." (*Whyte, supra*, 101 Cal.App.4th at p. 1453; see also *Thompson v. Impaxx, Inc.* (2003) 113 Cal.App.4th 1425, 1430 ["The issue of whether information constitutes a trade secret is a question of fact."].) This court "cannot[] resolve the conflicts in the evidence or reweigh it. The applicable standard of review dictates that we 'interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order[.]' . . . Accordingly, we must interpret the facts favorably to the" trial court's judgment. (*Whyte, supra,* at p. 1458.)

At trial, Slack testified he did not have "specific definitions" of the trade secrets SWM claimed Plageman misappropriated. Instead, Slack pointed to the processes and procedures that he, another employee, Lauren Young, and Plageman developed over time

19

to improve the efficiency and standardization of their use of various industry software programs, including AutoCAD, Trimble, Sitepro, Cirru and Nimbus. Slack and Young identified some of these processes as "attributes," "feature codes," and "data dictionaries," which they defined as abbreviations for features on a golf course or other irrigation project, used in the field in the collection of GPS data and later transferred to AutoCAD and other industry software programs. Slack also identified SWM's customization of AutoCAD with tool palettes and the creation of AutoCAD templates with title blocks and layering as trade secrets.

Slack, however, conceded that the ability to create these shortcuts and the customization of AutoCAD were not processes and procedures unique to SWM; rather they were inherent capabilities of the software programs. Further, when Plageman was hired by Slack, he had six years of industry experience and was trained and knowledgeable in the use of AutoCAD and the various other industry software programs at issue. Indeed, Plageman brought AutoCAD files he created in his previous job to SWM and used those files in his work for SWM. Slack himself shared SWM's AutoCAD files, which included information SWM claimed as trade secrets, with clients upon request.

In addition, Plageman's former employer testified the processes and procedures SWM claimed as trade secrets would not add value to its business because they were merely functions of the various software programs and were also common industry knowledge. This evidence showed the alleged trade secrets were not confidential, did not

"derive[] value from being unknown to others," and, therefore, supported the court's finding in favor of Plageman.[8] (*Whyte, supra,* 101 Cal.App.4th 1443, 1455.)

III

*ATTORNEY FEES*

Plageman and Zellers/Just Add Water each brought a motion for attorney fees. Plageman's motion was brought under both Labor Code section 98.2, subdivision (c) and Civil Code section 3426.4, while Zellers and Just Add Water sought fees under Civil Code section 3426.4. SWM challenges the two attorney fee awards on three grounds. SWM contends (1) there was no evidence to support the court's findings that its prosecution of its claim for misappropriation of trade secrets was made in bad faith; (2) the court improperly awarded fees for work related to SWM's breach of contract claim; and (3) the court failed to consider the reasonableness of the fee. We do not find merit in these arguments.

"Section 3426.4 authorizes the trial court to award attorney fees as a deterrent to specious trade secret claims." (*FLIR Systems, Inc. v. Parrish* (2009) 174 Cal.App.4th 1270, 1275 (*FLIR Systems*).) It provides: "If a claim of misappropriation is made in bad

---

8    SWM's reliance on *San Jose, supra,* 155 Cal.App.4th 1528 is misplaced. There, the court reversed summary judgment, concluding a material question of fact existed as to whether plaintiff general contractor's compilation of information for specific construction projects it was awarded constituted trade secrets. (*Id*. at pp. 1542-1543.) Importantly, the defendants, plaintiff's former employee and his new employer (a competing general contractor), used the information to take the projects away from the plaintiff. (*Id*. at pp. 1540-1541.) In addition to the important distinction that SWM appeals the court's judgment after trial, SWM does not contend any of its alleged secrets were used by Plageman to take its business away.

faith, . . . the court may award reasonable attorney fees to the prevailing party." (Civ. Code, § 3426.4.) "Although the Legislature has not defined 'bad faith,' our courts have developed a two-prong standard: (1) objective speciousness of the claim, and (2) subjective bad faith in bringing or maintaining the action, i.e., for an improper purpose." (*FLIR Systems, Inc., supra,* at p. 1275.)

"Objective speciousness exists where the action superficially appears to have merit but there is a complete lack of evidence to support the claim." (*FLIR Systems, supra,* 174 Cal.App.4th at p. 1276.) "Subjective bad faith may be inferred by evidence that appellants intended to cause unnecessary delay, filed the action to harass respondents, or harbored an improper motive. [Citation.] The timing of the action may raise an inference of bad faith. [Citation.] Similar inferences may be made where the plaintiff proceeds to trial after the action's fatal shortcomings are revealed by opposing counsel." (*Id*. at. p. 1278.) The failure of proof alone may support an inference "that the plaintiffs must have knowingly and intentionally prosecuted" the claim in bad faith. (*Gemini Aluminum Corp. v. California Custom Shapes, Inc.* (2002) 95 Cal.App.4th 1219, 1262 (*Gemini*).)

We review a court's decision to award attorney fees to a prevailing defendant on a claim for misappropriation of trade secrets allegedly brought in bad faith under the abuse of discretion standard. (*Gemini, supra,* 95 Cal.App.4th at pp. 1262-1263.) " 'Assuming some evidence exists in support of the factual findings, the trial court's exercise of discretion will not be disturbed unless it exceeds the bounds of reason. [Citation.] [¶] In reviewing the facts which led the trial court to impose [or deny] sanctions, we must

22

accept the version thereof which supports the trial court's determination, and must indulge in the inferences which favor its findings. [Citations.]' [Citation.]" (*Ibid.*)

SWM contends there was no "evidence before the court[] establishing bad faith on the part of SWM." The record shows otherwise. With respect to whether the claim was objectively specious, SWM voluntarily dismissed Zellers individually before the court's ruling on its motion for summary judgment. This dismissal was sufficient evidence to support the court's bad faith finding as to Zellers. Likewise, with respect to Just Add Water, as discussed, the court granted its motion for summary judgment after finding SWM failed to meet its burden to establish a prima facie case of misappropriation because it did not present any evidence Just Add Water acquired, disclosed, or used Plaintiff's alleged trade secrets. (See *FLIR Systems, supra,* 174 Cal.App.4th at p. 1277 [affirming finding claim was objectively specious where evidence showed "no 'actual damages,' misappropriation, or threatened misappropriation of trade secrets, and no threat of imminent harm."].)

With respect to Plageman, the trial court found there was no evidence to substantiate SWM's claim that its practices and procedures were trade secrets. Rather, the evidence presented by SWM showed the information at issue (1) was the knowledge needed to customize the software used in the irrigation design industry and (2) was commonly known to those in the industry. Additionally, Slack admitted SWM suffered no harm as a result of the alleged misappropriation. The court did not abuse its discretion in finding SWM's claim was objectively specious.

23

In addition to the existence of objective speciousness, which alone may establish SWM's subjective bad faith, the timing of SWM's claim also supported the court's finding on the second prong. (*FLIR Systems, supra,* 174 Cal.App.4th at p. 1278.) In his declaration opposing the motion of Zellers and Just Add Water, Slack stated that shortly after Plageman left SWM on January 10, 2008, he discovered e-mails from Plageman evidencing work performed using SWM's trade secrets. Slack also stated he attended a conference in the fall of 2008 where he saw Just Add Water's display of its work for the Del Mar Country Club. From this display Slack allegedly concluded Plageman had used SWM's trade secrets. Despite this knowledge, SWM did not file its claims for misappropriation of trade secrets until June 2009, after the labor commissioner awarded Plageman $11,091.75. SWM did not present any evidence explaining this delay, which supported an inference of subjective bad faith. The court's finding that SWM's trade secret claim was made in bad faith was supported by the record and we find no abuse of discretion.

SWM also contends the court erred by not apportioning out fees related to its claims for breach of contract, which unlike the appeal of the DLSE order and the misappropriation claim were not supported by a fee shifting statute. The court's award of attorney fees to Plageman for its defense of SWM's appeal of the DLSE order was based on Labor Code section 98.2, subdivision (c). That provision states: "If the party seeking review by filing an appeal to the superior court is unsuccessful in the appeal, the court shall determine the costs and reasonable attorney's fees incurred by the other parties to the appeal, and asses that amount as a cost upon the party filing the appeal."

24

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action." (*Bell v. Vista Unified School District* (2002) 82 Cal.App.4th 672, 686.) However, "[s]uch fees need not be apportioned when incurred for representation of an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award." (*Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1133; see also *Bell, supra*, 82 Cal.App.4th at p. 687 ["Apportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units."].) The apportionment of fees "rests within the sound discretion of the trial court." (*Ibid.*) The exercise of discretion "is abused only when its ruling ' "exceeds the bounds of reason, all of the circumstances before it being considered." ' " (*Ibid.*)

In conclusory fashion, SWM argues its "appeal of the Labor Commissioner [d]ecision does not have issues common to either of the claims in [its c]omplaint. Therefore, the fees awarded pursuant to the statutes should have been apportioned." The basis for the court's summary adjudication of SWM's breach of contract claim, however, was its determination that SWM's failure to pay wages to Plageman precluded its claim. That determination in turn was dependent on whether SWM was required to pay those wages. This issue overlapped completely with SWM's appeal of the labor commissioner's determination that those wages were owed to Plageman. Given this

25

overlap, the court's award of attorney fees to Plageman under Labor Code section 98.2 without apportionment of fees related to the breach of contract claim, was not an abuse of discretion.

Civil Code section 3426.4 and Labor Code section 98.2, subdivision (c) both provide for an award of "reasonable attorney's fees." SWM argues the court erred by not stating in its ruling the award of attorney fees was reasonable. As with the apportionment of fees, the determination of the "reasonableness of attorney fees is within the discretion of the trial court." (*Wilkerson v. Sullivan* (2002) 99 Cal.App.4th 443, 448.) While the trial court abuses its discretion by awarding fees that are not reasonable under the facts and circumstances of the case, there is no requirement that the court's ruling explicitly state the award is reasonable. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 578 ["trial courts need not provide a written explanation of their fee awards," (italics omitted)].)

Here, both judges considered not only initial briefing by the parties on the fee motions, but also requested an additional round of briefing and evidentiary submissions, including detailed time records, concerning the amount of fees to award. In fact, after initial determinations Plageman, Zellers and Just Add Water were entitled to attorney fees, each judge continued the motion to require the submission of billing records specifically to evaluate the reasonableness of the requested amounts. It is clear from this record the reasonableness of the fees were carefully considered and we find no abuse of discretion in the amounts awarded.

DISPOSITION

The judgment is affirmed.  Respondents are awarded costs on appeal.


HUFFMAN, J.

WE CONCUR:


BENKE, Acting P. J.


NARES, J.